**JOHNSTON DEVELOPMENT GROUP, INC., et al., Plaintiffs,**

v.

**CARPENTERS LOCAL UNION NO. 1578, et al., Defendants.**

Civ. A. No. 89–566(B).

United States District Court, D. New Jersey, Camden Vicinage.

Feb. 23, 1990.

See also, D.C., 728 F.Supp. 1142.

Blank, Rome, Comisky & McCauley by Ann B. Laupheimer, Robert G. Haas, Jerald R. Cureton, Cherry Hill, N.J., for plaintiffs.

Williams & Connolly by Aubrey M. Daniel, III, Washington, D.C., for defendants Carpenters Local Union No. 1578, Frank Spencer, and Ronald Jernegan.

Tomar, Simonoff, Adourian & O'Brien by Howard S. Simonoff, Haddonfield, N.J., for defendants Cement Masons Local 699 and Anthony LaTorre, Jr.

## OPINION

JEROME B. SIMANDLE, United States Magistrate:

This matter comes before the court upon motion of plaintiffs for a protective order quashing the deposition subpoenas served upon Jerald Cureton, Esquire ("Cureton") and Hillary Peterson, Esquire ("Peterson"), and for a protective order precluding the taking of their depositions. The issue to be resolved is whether the plaintiffs are entitled to a protective order precluding the depositions of their litigation attorney (Mr. Cureton), and of the corporate counsel for plaintiff Johnston Development Group, Inc. (Ms. Peterson), pertaining to discussions in which these lawyers participated with various defendants prior to the institution of this lawsuit. For the following reasons, plaintiffs' motion shall be denied in part, and these depositions may go forward subject to a partial protective order limiting the scope and duration of deposition questioning.

### I. Factual Background

In this complex litigation involving claims arising under numerous federal statutes including, inter alia, the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 et seq.), plaintiffs contend that defendant unions and various union and non-union concrete supply houses conspired to deprive plaintiffs of concrete and concrete products in order to ensure the employment of union subcontractors on plaintiffs' job sites. Plaintiffs are builders of residential developments. On December 19, 1989 Cureton, who is lead counsel for plaintiffs, and Peterson, who is vice-president and general counsel for plaintiff Johnston Development Group, Inc., were served with deposition subpoenas. The subpoenas were served on behalf of defendant Carpenters Local Union No. 1578. These subpoenas commanded Cureton and Peterson to appear for oral depositions on January 18 and 19, 1990, bringing with them any and all relevant notes and documents. Subsequent discussions between counsel revealed that these depositions were being convened to inquire into Mr. Cureton's and Ms. Peterson's involvement in several meetings, the contents of which are much in dispute in this lawsuit.

### A. Cureton's Involvement in the Subject Matter of this Litigation

Defendants seek to depose Mr. Cureton regarding four meetings he attended in or around October of 1988. At these meetings, various representatives of the present litigants met in the hope of negotiating a settlement that would have terminated the picketing of plaintiffs' job sites by members of the defendant unions. The picketing purportedly occurred to protest the fact that substandard wages were allegedly being paid by plaintiffs' contractors at these job sites. In attendance at the *first* meeting were Mr. Cureton, defendant Frank Spencer, and plaintiff Calton Homes Vice President Douglas Heppe. The *second* meeting was attended by Mr. Cureton, along with Mr. Heppe and defendant Anthony J. Latorre, Jr. In attendance at the *third* meeting were Thomas Ober (Business Manager for defendant Carpenters Local 393 and President of the Carpenters District Council), Pat Carey (Business Agent for Carpenters Union Local 393), Mr. Heppe and Mr. Cureton. The *fourth* meeting involved three non-party representatives of the Builders League of South Jer-

sey, Mr. Ober, Mr. Spencer, and Mr. Cureton.[1]

The union defendants are also seeking to depose Mr. Cureton due to a statement made by Reginald Dryzga, Chairman of Johnston Development Group, during his deposition. Mr. Dryzga testified that he had asked Mr. Cureton whether or not it was proper to make a contribution to the union's Political Action Committee. Dryzga stated that Mr. Cureton advised him that such a contribution was illegal, and that immediately after being advised of this fact, Dryzga contacted Frank Spencer and told him about the illegality of the contribution.

Plaintiffs state that Mr. Cureton will not be called as a witness in this action, while defendants have indicated that they may wish to call Mr. Cureton if his testimony is necessary at trial.

### B. *Ms. Peterson's Involvement in the Subject Matter of this Litigation*

The defendant unions seek to depose Ms. Peterson because as vice-president and general counsel for Johnston Development, Ms. Peterson frequently spoke with defendants and witnessed many of their picketing activities. Ms. Peterson allegedly possesses factual knowledge regarding the following allegations raised in plaintiffs' complaint in this matter:

1) The alleged refusal by Eastern Transit Mix to deliver concrete to plaintiff Johnston Development Group's Hidden Creek jobsite. Third Amended Complaint at ¶ 39.

2) Defendants' alleged interference with vehicles at plaintiff Johnston Development Group's Hidden Creek jobsite. Third Amended Complaint at ¶ 40.

3) Telephone conversations in which defendant LaTorre allegedly threatened to cut off concrete supplies to the Hidden Creek jobsite if union contractors were not hired. Third Amended Complaint at ¶ 42.

4) Defendants' alleged attempts to coerce the removal of non-union subcontractors from the Hidden Creek jobsite by disrupting supplies of building materials. Third Amended Complaint ¶ 46.

5) Picketing in which defendants allegedly carried signs that unlawfully failed to mention any particular employer. Third Amended Complaint ¶ 98.

Plaintiffs have also admitted that Ms. Peterson attended meetings on January 29 and February 24, 1988, with Michael Morales, a Johnston Development Group Project Manager, and defendant Ronald Jernegan, and took notes during these meetings. According to defendants, Ms. Peterson's testimony regarding these meetings, and any notes taken during these meetings, will allegedly show that the union defendants never used picketing to coerce the employment of union laborers.

Furthermore, plaintiffs have claimed as damages the time expended by Ms. Peterson allegedly as a result of defendants' picketing and related activity, and plaintiffs seek to recover $13,508 in salary paid to Ms. Peterson. Plaintiffs have characterized this loss as "management time" allegedly lost as a result of picketing and related activity at the Hidden Creek site.

The subpoena to Ms. Peterson also seeks to compel her to produce notes which she took at the meetings with defendant Jernegan on January 29, 1988 and February 24, 1988. The defendants, Carpenters Local Union No. 1578, et al., have cross-moved to compel the production of Ms. Peterson's notes when her deposition is taken. Plaintiffs' reply brief states, subject to confirmation in Ms. Peterson's affidavit, that these notes are no longer in her possession nor in the possession of plaintiffs, because they were apparently lost when her office was moved from a construction trailer to a model home site.

Like Mr. Cureton, plaintiffs do not expect to call Ms. Peterson as a witness at trial, but defendants may be seeking to do so if necessary for their defense.

---

1. Mr. Cureton is labor counsel to the Builders League of South Jersey and participated in these meetings in that capacity.

## II. *Discussion of Law*

### A. *Depositions of Adversary Counsel*

■ There is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information. The Federal Rules of Evidence do not discuss attorneys as witnesses, while Rule 605 and 606 contain preclusions against obtaining testimony of the presiding judge or any participating juror. Instead, the request to depose a party's attorney must be weighed by balancing, generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself.

■ The plaintiffs, as the parties seeking the protective order to preclude their attorneys' depositions, bear the burden under Rule 26(c), Fed.R.Civ.P., of demonstrating good cause to preclude or limit the testimony. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986). In that case, the Third Circuit stated:

> ... Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption [in favor of discovery], the party seeking the protective order must show good cause by demonstrating particular need for protection. Broad allegations of harm unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.

*Id.*

■ In cases where the attorney's conduct itself is the basis of a claim or defense, there is little doubt that the attorney may be examined as any other witness, *see Jamison v. Miracle Mile Rambler, Inc.,* 536 F.2d 560 (3d Cir.1976); *Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 610 F.Supp. 1319 (D.Del.), *aff'd,* 769 F.2d 152 (3d Cir.1985); *Scovill Manufacturing Co. v. Sunbeam,* 61 F.R.D. 598 (D.Del.1973). In the present case, the meetings at issue are each highly relevant to plaintiffs' claims in the case, but no claim or defense appears to be predicated specifically upon an attorney's conduct or alleged misconduct.

■ Similarly, caution in permitting the deposition of litigation counsel is indicated where the subject matter of the deposition would be likely to be heavily intertwined with privileged or confidential information, *see In re Arthur Treacher's Franchisee Litigation,* 92 F.R.D. 429 (E.D.Pa. 1981) [limiting deposition of defendant's attorney to written questions under Rule 31 where plaintiff sought discovery concerning confidential meetings attended by defendants and their attorneys]. In the present case, plaintiffs' concerns of privilege or confidentiality are unwarranted because third parties were present at each conversation for which deposition testimony is sought, and the presence of adverse third parties destroys the confidentiality otherwise attaching to lawyer-client conversations. *International Paper Co. v. Fibre Board Corp.,* 63 F.R.D. 88, 93 (D.Del.1974); *Bird v. Penn Central Co.,* 61 F.R.D. 43, 46 (E.D.Pa.1973).

■ The deposition of the attorney may be "both necessary and appropriate" where the attorney may be a fact witness, such as an "actor or viewer," *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.,* 117 F.R.D. 83, 85 n. 2 (M.D.N.C.1987), rather than one who "was not a party to any of the underlying transactions giving rise to the action," *Advance Systems, Inc. of Green Bay v. APV Baker PMC, Inc.,* 124 F.R.D. 200, 201 (E.D.Wis.1989), or whose role in a transaction was speculative and not central to the dispute, *Walker v. United Parcel Services,* 87 F.R.D. 360, 362 (E.D.Pa.1980). For example, in *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1330 (8th Cir. 1986), an attorney who was not a fact witness to the underlying accident could not be deposed concerning her after-the-fact compilation of litigation documents; the deposition was precluded because the facts could be obtained by other means and because counsel's knowledge was not "crucial and unique."

■ The preclusion of attorney depositions is to be analyzed with the same standards as any other protective order motion,

with the movant bearing the burden of persuasion under Rule 26(c), above. The party seeking to block its attorney's deposition concerning relevant[2] information will succeed if it establishes undue burden or oppression measured by (1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs; (2) the availability of the information from other sources that are less intrusive into the adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony.

First, any discovery must pass the proportionality test of Rule 26(b)(1). It must concern relevant information that is within the inquiring party's legitimate discovery needs when assessed against the lawsuit's "nature and complexity, the importance of the issues at stake in a case seeking damages ... and the significance of the substantive issues...." Notes of the Advisory Committee, Rule 26(b) (1983 Amendment). The deposition of an adverse attorney on central factual issues, rather than peripheral concerns, would weigh more heavily for the proportionality of the discovery sought, see *Walker v. United Parcel Services, Inc.*, 87 F.R.D. at 362 [denying deposition involving "only one of numerous grounds" in plaintiff's prayer for relief].

Second, availability from other sources, and its corollary concern of avoiding cumulative or duplicative discovery, are also factors favoring limitation of discovery under Rule 26(b)(1)(i). A recollection of an event witnessed by fifty other persons would be readily obtainable from many others, and the attorney's testimony would likely be duplicative; the attorney's conversation with one or two other persons, however, gives rise to a more unique perspective.

Third, the prospect of oppression is ever-present in the examination of adverse counsel. Various courts have seemingly given this factor controlling weight, making the unexamined assumption that oppressive motivations are at work in the party seeking the discovery. For example, the *Shelton* court believed that the "harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process," 805 F.2d at 1330. Also, in *In re Arthur Treacher's Franchisee Litigation, supra,* Judge Hannum expressed concern that the standards of the legal profession would be lowered, 92 F.R.D. at 439. As in any deposition, the sharp practitioner may attempt to gain an edge in the adversarial process by belligerence, high-handedness or confrontational tactics; but the Rules suffice to redress such misconduct if it occurs. The graver concern is that an attorney's deposition will deflect the attorney's efforts in case preparation on behalf of the client and inject an unproductive dynamic into the litigation, perhaps poisoning the necessary chemistry between professionals. The court is well-advised to assess this risk if the deposition is otherwise justified, for the discovery may extract a dear price from the healthy adversary process upon which our system places such heavy reliance.

These factors are considered against the background of this case.

## B. *Mr. Cureton's Participation*

■ Mr. Cureton, first, has a key role in this litigation as plaintiffs' lead attorney. The plaintiffs have claimed that the drain upon their lead attorney's time and case preparation is unjustified by defendants' needs for the information he possesses.

The facts sought concern the four meetings noted above, and the conversation with his client, Mr. Dryzga, as to which Dryzga has already testified and waived the attorney-client privilege for advice of counsel. The four meetings occurred within three months before filing of suit, and

---

**2.** Naturally, if the anticipated scope of the attorney's deposition does not concern relevant issues, no deposition may be taken under Rule 26(b)(1).

the participants discussed the objects and purposes of the defendants' picketing. Plaintiffs' Complaint alleges that "no legitimate labor dispute" existed between plaintiffs and defendants, and that the primary purpose or intent of defendants' picketing was to coerce plaintiffs into hiring contractors employing union labor. The defendants' motivation is a key issue in this case, and the meetings concerned that issue.

The parties agree that the contents of those meetings are intensely disputed. The few participants have been deposed, and sharply conflicting details emerge. Also, Mr. Heppe of Calton Homes—the only plaintiff's representative at the first, second or third meetings other than Mr. Cureton—is allegedly unclear in recollecting several important statements Mr. Cureton allegedly made, and has a failure of recollection as to others. The defendants have a strong justification for seeking Mr. Cureton's testimony for purposes of probing these conversations.

The substantial equivalent information would appear to be unavoidable from the other participants, who have been deposed with conflicting results. Assessments of credibility may hinge upon the consistency of the participants' recollections, including Mr. Cureton's. Now, as discovery is nearing its end, the unavailability of substantially identical information may be gaged with greater accuracy.

Mr. Cureton's conversation with Mr. Dryzga, occurring prior to the litigation, concerned Dryzga's consultation of Mr. Cureton concerning possible payments by builders to a union-designated political action committee. Cureton advised Dryzga that such a payment would be illegal, while defendant Spencer maintains that he told Dryzga in the first place that the proposed contribution could not be accepted because it was illegal. Plaintiffs have alleged in this suit that defendant Local 1578 was willing illegally to accept contributions to a political action committee in exchange for ceasing picketing of plaintiff Johnston's job sites. Dryzga has waived the attorney-client privilege by placing the communication at issue, *Conkling v. Turner*, 883 F.2d

431 (5th Cir.1989), the underlying Dryzga–Spencer understandings are disputed, and testimony on this consultation is highly likely to shed light on the dispute.

That Mr. Cureton participated in multiple conversations of clear importance, few participants and disputed contents, concerning central issues giving rise to this suit strongly favor permitting defendants to obtain his deposition testimony regarding these instances.

The importance and degree of uniqueness of his information outweighs the potential negative impact upon the attorney-client relationship and the adversary process. First, the plaintiffs selected Mr. Cureton as their counsel knowing he had acted as labor counsel during key developments in the unrest giving rise to this case, and that he personally witnessed and participated in some of the key conversations with defendants' representatives upon which several major allegations are founded. It can hardly be a surprise that labor counsel might possess knowledge as an actor in those events. Second, this court is cognizant of the sometimes edgy and distrustful relationship between adverse counsel in this case, but it is also aware of the progress and cooperation among counsel in preparing this complicated case for trial and adhering to tight scheduling deadlines, in compliance with court orders. Rather than permitting the mere risk of attorney misconduct to bar this discovery, the court will entrust to counsel their obligations to conduct this deposition fairly and quickly. If questioning is seen as improper or harassing, objections can be made and ruled on. Such a procedure and expectation comports with the Third Circuit's view in *Jamison v. Miracle Mile Rambler, Inc., supra,* 536 F.2d at 565–66, which stated:

> There will be ample opportunity for legitimate objections to be raised during depositions if the plaintiff transgresses into forbidden areas. Those objections can be ruled on as they occur without the blanket prohibition imposed here.

The scope of the deposition of Mr. Cureton must be narrow, consisting only of the facts within his recollection of the four

conversations with union representatives and of his conversation with Mr. Dryzga concerning the issue of political contributions. Questioning regarding Mr. Cureton's background, experience, or other efforts in representing these clients or the Builders League will not be permitted. Testimony must be confined to these five conversations. To reinforce the narrowness of focus, but also recognizing the importance of the conversations, the length of the deposition will be limited to six (6) hours on one day including normal colloquy among counsel. Subject to these restrictions, the deposition of Mr. Cureton may go forward and the plaintiffs' motion for protective order will be denied.

### C. *Ms. Peterson's Participation*

■ As house counsel to one of the plaintiffs, Ms. Peterson had a substantial degree of participation in the underlying events as they unfolded. The damages sought by plaintiffs for her managerial/attorney services exceed $13,000, and some type of further discovery upon the basis for that fee would be warranted.

The two conversations in January—February, 1988, in which she participated, allegedly were the occasion for a demand by defendant Jernegan for "a union subcontractor to be awarded the carpentry work for Hidden Creek," Third Amended Complaint ¶ 35, and an agreement by plaintiff Johnston to "accept bids from union subcontractors recommended by Jernegan," *id.* at ¶ 36. The defendants deny using picketing to coerce employment of unwanted labor. The depositions of the two other participants to these conversations have been completed, and it is apparent that Ms. Peterson's recollections as the only observer of those conversations may help to clarify these issues.

The degree of importance of these conversations in the scheme of the overall case is less than Mr. Cureton's conversations. But Ms. Peterson's substantial managerial time and efforts are also claimed in this case as an item of damages, and the two conversations with the defendant Jernegan provide important support, in plaintiffs' own view, for plaintiffs' allegations.

The recollections of Ms. Peterson are unavailable from other sources, as her notes have been lost. Information about her managerial time lost in dealing with defendants' allegedly illegal activities can, however, be obtained from less intrusive and time-consuming sources. Instead of giving deposition testimony of Ms. Peterson on the rather tedious computations of time and salary reflective of her involvement, the better course will be for plaintiff Johnston Development to supplement its damages interrogatory answer to provide a more detailed breakdown of the bases for the computation of the $13,508 "cost of time" figure attributed for Ms. Peterson's services concerning Hidden Creek picketing. Provided that this supplemental answer is served prior to the deposition, there will be no deposition questioning of Ms. Peterson concerning her activities, hours and rates. This restriction also recognizes that the issues surrounding the $13,508 claim for Ms. Peterson's salary are of only slight overall importance in this case. Plaintiff seeks $65,716 in lost managerial time as a result of the Hidden Creek picketing alone, and plaintiffs seek several million dollars in damages for various alleged losses overall. In comparison, detailed questioning about counsel's activities behind the $13,508 loss would be disproportional and unduly disruptive of the attorney-client relationship and the adversary process in this case. If the more specific breakdown of time and costs is ambiguous, only limited questioning will be permitted to attempt to clarify the matter.

Furthermore, questioning regarding other events that Ms. Peterson may have witnessed in her duties as corporate counsel will not be permitted. Her observations of picketing activity, for example, are far from verging on the unique because many persons have provided relevant testimony. Similarly, her knowledge of defendants' alleged efforts to deter concrete suppliers from dealing with plaintiffs concerns an area well developed in other discovery to date. The corporate representative of Johnston Development has been deposed

on the various issues of which Ms. Peterson may have gained knowledge as a corporate attorney, but there is no assertion by defendants that Ms. Peterson was an actor and participant in those events. Therefore, no questions regarding her knowledge of other events or her other conduct on behalf of plaintiff Johnston Development will be permitted.

Overall, the justification for Ms. Peterson's deposition is somewhat less than for Mr. Cureton's, but the potential harm to the adversary process is also less. She is corporate counsel for one of the plaintiffs and is providing assistance to Mr. Cureton's firm in this case, while Mr. Cureton is lead counsel for all plaintiffs. She acted as part of plaintiff Johnston's management team, while Cureton acted as retained labor counsel to the Builders League group, including all plaintiffs here.

Striking the balance and observing the narrow scope of questioning which will be permitted of Ms. Peterson—limited to the two conversations with defendant Jernegan in January and February 1988, including loss of notes of these conversations, and reasonable questions to clarify ambiguities, if any, in the time loss computations for her services—the deposition will be permitted to go forward, limited to four (4) hours including normal colloquy among counsel, on one day. Any objections to the questioning may be made upon the record and they will be ruled upon, *see Jamison v. Miracle Mile Rambler, Inc., supra.*

### D. *Conclusion*

For the reasons discussed above, the plaintiffs' motion for protective order precluding defendants Local 1578, Spencer and Jernegan from obtaining depositions of plaintiffs' counsel Jerald R. Cureton, Esquire and Hillary Peterson, Esquire, will be denied. The deposition of Mr. Cureton may go forward, limited to six (6) hours on one day, limited in scope to the four meetings in October, 1988, and the consultation of Mr. Dryzga. The deposition of Ms. Peterson may go forward, limited to four (4) hours in one day, limited in scope to the two January—February 1988 Morales–Jer-

negan meetings and reasonable follow-up questions necessary to clarify any ambiguity in the court-ordered supplemental interrogatory answer concerning computations of plaintiff Johnston Development's claims for Ms. Peterson's lost managerial time.

The accompanying Order is being entered.

### ORDER

This matter having come before the court upon motion of plaintiffs pursuant to Rule 26(c), Fed.R.Civ.P., for a protective order to preclude the taking of depositions of Jerald Cureton, Esquire, and Hillary Peterson, Esquire; and also upon cross-motion of defendants Carpenters Local Union No. 1578, Frank Spencer, Ronald Jernegan and Carpenters District Council of South Jersey pursuant to Rule 37(a), Fed.R.Civ.P., to compel production of the notes taken by Ms. Peterson during meetings with defendant Jernegan on January 29 and February 24, 1988; and

The court having considered the submissions of the parties and the arguments of counsel at a hearing on February 16, 1990; and

For reasons set forth in the Opinion of today's date;

IT IS this 22nd day of February, 1990 hereby

ORDERED that plaintiffs' motion for protective order be, and it hereby is, DENIED in part, and the depositions may go forward upon a mutually convenient date, limited as follows:

a) Deposition of Mr. Cureton—limited to six (6) hours on one day including normal colloquy among counsel; questioning limited in scope to facts within his recollection of the four conversations with union representatives and of his consultation with Mr. Dryzga; no questions regarding his background, experience or other efforts on behalf of these plaintiffs or the Builders League will be permitted;

b) Deposition of Ms. Peterson—limited to four (4) hours on one day including

normal colloquy among counsel; questioning limited in scope to facts within her recollections of the two conversations with Mr. Jernegan, including loss of notes of the conversations, and reasonable questions to clarify ambiguities, if any, in the time loss computations for her services; no questions regarding her knowledge of other events or her conduct on behalf of plaintiff Johnston Development will be permitted;

IT IS FURTHER ORDERED that, prior to the time selected for Ms. Peterson's deposition, plaintiff Johnston Development shall serve a supplementation to its damages interrogatory answer to provide a more detailed breakdown of the bases for the computation of the "cost of time" figure attributed for Ms. Peterson's services concerning Hidden Creek picketing;

IT IS FURTHER ORDERED that defendants' cross-motion to compel production of notes be, and it hereby is, DISMISSED AS MOOT, the notes having been lost.

No costs or fees.