**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Plaintiff,**

v.

**George KRIEGER, et al., Defendants.**

Civ. No. 94–0478–K(CGA).

United States District Court, S.D. California.

March 22, 1995.

Mark Hellenkamp, for plaintiff/counterdefendant American Cas. Co. of Reading, PA.

Timothy C. Stutler, for defendants/counterclaimants George Krieger, Anthony Forcier, and Lisa Machado.

## OPINION AND ORDER

AARON, United States Magistrate Judge.

## I.

### INTRODUCTION

This is a declaratory relief action involving a dispute as to whether plaintiff/counterdefendant American Casualty Company of Reading, Pennsylvania ("American Casualty"), is obligated to defend or to provide liability coverage under an insurance policy issued to defendant/counterclaimant George Krieger ("Krieger") for injuries sustained by defendants/counterclaimants Anthony Forcier ("Forcier") and Lisa Machado ("Machado") during a bungee jumping accident.

American Casualty has served deposition subpoenas on attorneys Ronald A. Marks and Stewart J. Neuville. Attorney Marks represents all three defendants/counterclaimants as "associate counsel" in the present case; both Marks and Neuville represented Forcier and Machado in an underlying state court action. Krieger, Forcier, and Machado object to these depositions. American Casualty has filed a "Memorandum of Points and Authorities in Support of Taking Depositions of Attorneys Ronald A. Marks and Stewart J. Neuville." Krieger, Forcier, and Machado have filed an "Opposition to American's Attempts to Depose Counterclaimants' Attorneys," and have requested a protective order.

The issue to be decided is whether Krieger, Forcier, and Machado are entitled to a protective order precluding the depositions of attorneys Marks and Neuville. For the reasons set forth below, the request for a protective order is granted in part. The depositions may go forward subject to a partial protective order limiting both the scope and the duration of the depositions.

## II.

### FACTUAL BACKGROUND

American Casualty filed this action to determine whether a duty to defend or a duty

to indemnify exists under the terms of a general commercial liability insurance policy issued by American Casualty to Krieger on February 1, 1992, for injuries to Forcier and Machado arising out of a bungee jumping accident.

Forcier and Machado were injured while practicing a "tandem bungee jump" at a bungee jumping exhibition held at the San Diego Sports Arena on October 2, 1992. Krieger was the promoter of the event. On June 15, 1993, Forcier and Machado filed an action in San Diego County Superior Court against a number of defendants, including Krieger, for injuries alleged to have resulted from the incident. Attorney Ronald A. Marks represented Forcier and Machado in their lawsuit.

Documents which have been produced as discovery in the present case show that Attorney Marks had contact with Krieger prior to filing Forcier and Machado's complaint. On October 21, 1993, Forcier and Machado filed a request for entry of default against Krieger in the amount of $1,785,533.77. On February 8, 1994, Attorney Marks amended the default request to $6,391,822.21. On April 21, 1994, a default judgment in the amount of $6,391,822.21 was entered against Krieger.

On August 11, 1994, Krieger assigned to Attorney Marks his rights against American Casualty to causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.[1] Attorney Marks later assigned these rights to Forcier and Machado. Krieger was not represented by other counsel at the time the assignment to Attorney Marks was executed. Attorney Neuville, who shares office space with Attorney Marks and worked on the Forcier and Machado lawsuit, prepared the assignment documents.

On March 28, 1994, American Casualty filed this action for declaratory relief, seeking an adjudication that it had no duty to defend or indemnify Krieger against Forcier and Machado's claims. On August 31, 1994, Forcier and Machado filed a counterclaim against American Casualty, asserting causes

of action for breach of contract and breach of the implied covenant of good faith and fair dealing. This counterclaim is based upon the default judgment against Krieger, and the assignment of Krieger's rights to Forcier and Machado. On that same date, Krieger also filed a counterclaim against American Casualty, asserting causes of action for fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress. Attorney Marks signed as attorney of record on both counterclaims.

The law firm of Wright & L'Estrange are lead counsel for Krieger, Forcier, and Machado in the present case. Attorney Marks is also counsel of record for Krieger, Forcier, and Machado. His role has been described as "associate counsel." To date, Marks' participation in this litigation has been limited to preparing the counterclaims, and assisting attorneys from the Wright & L'Estrange firm with pretrial discovery. According to counsel, what role Marks will play during the trial of this case, if any, has not yet been determined. It appears that Attorney Neuville has not performed any work in the present litigation.

During the course of discovery in this case, American Casualty served deposition subpoenas on attorneys Marks and Neuville. Krieger, Forcier, and Machado objected to these depositions. The attorneys for each side met and conferred, pursuant to Local Rule 26.1(a), but were unable to resolve their differences. They then contacted the court, and were asked to submit points and authorities supporting their positions.

On March 6, 1995, American Casualty filed a "Memorandum of Points and Authorities in Support of Taking Depositions of Attorneys Ronald A. Marks and Stewart J. Neuville." In its memorandum, American Casualty indicated that it seeks to depose Marks and Neuville regarding the circumstances surrounding both the default judgment entered against Krieger in the underlying action and

---

1. Krieger retained the right to collect damages from American Casualty for emotional distress,

consequential damages, and punitive damages.

the assignment of Krieger's rights against American Casualty to Forcier and Machado.[2] On March 8, 1995, Krieger, Forcier, and Machado filed an "Opposition to American's Attempts to Depose Counterclaimants' Attorneys," and a request for a protective order, under Rule 26(c) of the Federal Rules of Civil Procedure, to preclude these depositions. On March 10, 1995, a hearing was held at which counsel argued their respective positions.

### III.

### DISCUSSION

### A. DEPOSING AN OPPOSING PARTY'S ATTORNEY

■ Neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence prohibit taking the deposition of an opposing party's attorney. *Shelton v. America Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986); *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J.1990). In fact, Rule 30(a) of the Federal Rules of Civil Procedure permits a party to take the testimony of *"any person"* by deposition, without leave of court. The Rule sets forth certain exceptions to this provision, none of which exempt a party's attorney from being subject to deposition. *See, NFA Corp. v. Riverview Narrow Fabric, Inc.*, 117 F.R.D. 83, 84 (D.N.C.1987).

Citing the lack of any prohibition in the Federal Rules against obtaining the deposition of adverse counsel, at least one court has held that a party seeking a protective order to preclude its attorney's deposition must bear the burden, under Rule 26(c) of the Federal Rules of Civil Procedure, of demonstrating good cause to preclude or limit the testimony. *Johnston*, 130 F.R.D. at 352, citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir.1986).

Other courts have held that because of the negative impact that deposing a party's attorney can have on the litigation process, the taking of opposing counsel's deposition should be permitted only in limited circumstances, and that the party seeking to depose another party's attorney must demonstrate the propriety and the need for the deposition. *Shelton*, 805 F.2d at 1327; *Harriston v. Chicago Tribune Company*, 134 F.R.D. 232, 233 (N.D.Ill.1990); *Hay and Forage Industries v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D.Kan.1990); *West Peninsular Title Company v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D.Fla.1990); *Advance Systems, Inc. of Green Bay v. APV Baker PMC, Inc.*, 124 F.R.D. 200, 201 (E.D.Wis.1989); *NFA Corp.*, 117 F.R.D. at 85.

Neither the Court of Appeals for the Ninth Circuit nor any other court within the Ninth Circuit has issued a published opinion addressing the circumstances under which a party may take the deposition of an opposing party's attorney.

### B. THE PARTIES' POSITIONS

#### 1. American Casualty's Argument

American Casualty asserts that attorneys Marks and Neuville are important witnesses to events and conversations which took place prior to the commencement of the present litigation. The events and conversations into which American Casualty wishes to inquire at the proposed depositions occurred prior to the formation of an attorney/client relationship between either Marks or Neuville and Krieger. Relying on the opinion in *Johnston Development Group, Inc. v. Carpenters' Local Union No. 1578*, 130 F.R.D. 348, American argues that because Marks and Neuville are witnesses to relevant, nonprivileged facts and/or communications, they may be deposed "like [sic] any other witness."

In *Johnston*, the defendants served deposition subpoenas on plaintiffs' lead counsel and on plaintiffs' vice president and general counsel. Defendants sought to depose these attorneys regarding their involvement in a series of meetings which had taken place prior to the filing of the subject lawsuit. Plaintiffs sought a protective order to preclude the depositions.

---

**2.** American Casualty has withdrawn its request to depose Marks and Neuville regarding settlement discussions in the underlying case.

In determining whether or not the depositions should go forward, the *Johnston* court declared that in cases where an attorney's conduct itself is the basis for a claim or defense, "... there is little doubt that the attorney may be examined as any other witness." *Id.* at 352, citing *Jamison v. Miracle Mile Rambler, Inc.,* 536 F.2d 560 (3rd Cir. 1976); *Kalmanovitz v. G. Heileman Brewing Co., Inc.,* 610 F.Supp. 1319 (D.Del.) (*Aff'd,* 769 F.2d 152 (3rd Cir.1985)); *Scovill Manufacturing Co. v. Sunbeam,* 61 F.R.D. 598 (D.Del.1973). However, the court observed that while the meetings at issue in *Johnston* were "highly relevant" to plaintiffs' claims in the case, no claim or defense was predicated specifically upon an attorney's conduct or alleged misconduct. *Id.*

The *Johnston* court noted that caution in permitting the deposition of litigation counsel would be indicated where the subject matter of the deposition would be likely to be intertwined with privileged or confidential information. *Id.,* citing *In re: Arthur Treacher's Franchisee Litigation,* 92 F.R.D. 429 (E.D.Pa.1981). However, the *Johnston* court further observed that the deposition of an attorney may be " 'both necessary and appropriate' where the attorney may be a fact witness, such as an 'actor or viewer,' ... rather than one who 'was not a party to any of the underlying transactions giving rise to the action,' ... or whose role in a transaction was speculative and 'not central to the dispute." *Johnston,* 130 F.R.D. at 352, quoting *NFA Corp.,* 117 F.R.D. at 85 n. 2 and *Advance Systems,* 124 F.R.D. at 201, and citing *Walker v. United Parcel Services,* 87 F.R.D. 360, 362 (E.D.Pa.1980).

The *Johnston* court held that the question whether attorney depositions should be precluded is to be analyzed with the same standards as any other protective order motion, with the movant bearing the burden of persuasion, under Rule 26(c), of demonstrating good cause to preclude or limit the testimony. The court further stated that a request to depose a party's attorney must be weighed by balancing the necessity for such discovery against its potential to oppress the adverse party and to burden the adversary process.

*Johnston,* 130 F.R.D. at 352–53. The court held,

> The party seeking to block its attorney's deposition concerning relevant information will succeed if it establishes undue burden or oppression measured by:
>
> (1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs;
>
> (2) the availability of the information from other sources that are less intrusive into the adversarial process; and
>
> (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony.

*Id.* at 353.

Applying this test to the facts before it, the *Johnston* court denied the plaintiff's motion for a protective order. The court found that the importance and degree of uniqueness of the information that the attorney possessed outweighed the potential negative impact upon the attorney/client relationship and the adversary process, and held that the depositions should therefore go forward. However, the court entered an order specifically limiting the scope of questioning that would be permitted at the depositions.

Relying on *Johnston,* American Casualty urges this court to allow it to proceed with the depositions of Marks and Neuville. American Casualty maintains that the depositions of attorneys Marks and Neuville are both necessary and appropriate, and that this fact outweighs any perceived negative impact on the proceedings in this case.

### 2. Krieger, Forcier, and Machado's Argument

Relying primarily on the opinion of the Court of Appeals for the Eighth Circuit in *Shelton v. American Motors Corp.,* 805 F.2d 1323, Krieger, Forcier, and Machado take the position that because attorneys Marks and Neuville are defendants/counterclaimants' attorneys, American Casualty is "presumptively barred" from deposing them.

*Shelton* involved a product liability action against American Motors Corporation ("AMC") brought by the parents of a woman

who was killed when the Jeep she was driving overturned. During the discovery process, plaintiffs filed a notice to take the deposition of Attorney Burns, an attorney in AMC's litigation department. Burns was assigned to the subject litigation as AMC's "supervising in-house counsel." AMC sought a protective order, and moved to quash the deposition subpoena.

The magistrate judge before whom the motion for a protective order was brought granted the motion for a protective order in part, but denied the motion to quash. Attorney Burns was subsequently deposed, but refused to answer a number of questions, basing her refusal on either the work product doctrine or the attorney-client privilege. The questions that Attorney Burns refused to answer primarily concerned the existence or nonexistence of various documents regarding the Jeep model in question. *Id.* at 1324–25.

After the deposition, plaintiffs moved for sanctions, including default judgment, on the basis of Burns' refusal to answer these questions. The district court ultimately issued an order to show cause why Burns should not be held in contempt, and why sanctions, including default judgment, should not be entered against AMC. AMC maintained its position before the district court, and the district court granted plaintiffs' motion for a default judgment. *Id.* at 1325–26.

The Court of Appeals for the Eighth Circuit reversed the district court, holding that where the deponent is opposing counsel who has engaged in a selective process of compiling documents from among voluminous files in preparation for the subject litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected as work product. *Id.* at 1326. The court held that because the information sought was protected by the work product doctrine, default judgment was unwarranted. *Id.* at 1330.

In reaching this conclusion, the *Shelton* court observed that the practice of forcing trial counsel to testify as a witness "has long been discouraged" and has been recognized as disrupting the adversarial nature of our judicial system. *Id.* at 1327, quoting *Hick-*

*man v. Taylor,* 329 U.S. 495, 513, 67 S.Ct. 385, 395, 91 L.Ed. 451 (1947) and citing *Hickman* at 516, 67 S.Ct. at 396 (Jackson, J., concurring). The *Shelton* court recognized that situations could arise in which a court should order the taking of opposing counsel's deposition, but held that this should occur only in limited circumstances. *Shelton,* 805 F.2d at 1327. Specifically, the court held that a party should be permitted to take the deposition of opposing counsel only where the party seeking to take the deposition has shown that,

(1) no other means exist to obtain the information than to depose opposing counsel . . . ;

(2) the information sought is relevant and nonprivileged; and

(3) the information is crucial to the preparation of the case.

*Id.* (citations omitted).

In the present case, Krieger, Forcier, and Machado argue that American Casualty has not met its burden under *Shelton,* and that this court should therefore issue a protective order barring the depositions of attorneys Marks and Neuville.

## C. LEGAL ANALYSIS

The *Johnston* court based its decision on the fact that both attorneys whose depositions were sought had attended and participated in meetings which predated the commencement of the litigation, and which were "highly relevant" to plaintiffs' claims in the case. *Johnston,* 130 F.R.D. at 352. The court regarded the attorneys as "fact witnesses" who possessed important and unique information. *Id.* at 354.

The *Johnston* court distinguished *Shelton* on the basis that the attorney whose deposition was sought in that case had *not* been a fact witness to the underlying transactions. The *Johnston* court construed the holding in *Shelton* narrowly, i.e., that an attorney who was not a fact witness to the underlying accident could not be deposed concerning her after-the-fact compilation of litigation documents. The *Johnston* court concluded that the *Shelton* court had not allowed the deposition of the attorney to be taken because the

plaintiffs could obtain the facts by other means, and because counsel's knowledge was not "crucial and unique." *Johnston,* 130 F.R.D. at 352.

However, the *Johnston* court's holding that a motion for protective order to preclude the deposition of a party's attorney is to be analyzed with the same standards as any other protective order motion, with the movant bearing the burden of persuasion under Rule 26(c), appears to be the exception. Most courts which have addressed these issues have held that the taking of opposing counsel's deposition should be permitted only in limited circumstances and that, because of the potential for abuse inherent in deposing an opponent's attorney, the party seeking the deposition must demonstrate its propriety and need before the deposition may go forward. *Shelton,* 805 F.2d at 1327; *Harriston,* 134 F.R.D. at 233; *NFA Corp.,* 117 F.R.D. at 85. Courts have reached this conclusion even where it is clear that the attorney *is* a witness to relevant, nonprivileged events and/or conversations. *Bogan v. Northwestern Mutual Life Insurance Co.,* 152 F.R.D. 9 (S.D.N.Y.1993); *Hay and Forage Industries,* 132 F.R.D. at 689; *West Peninsular Title Company,* 132 F.R.D. at 302.

These courts have recognized that there *are* circumstances under which the deposition of a party's attorney will be both necessary and appropriate, for example, where the attorney is a fact witness, such as an "actor or a viewer." *NFA Corp.,* 117 F.R.D. at 85 n. 2, citing *Levingston v. Allis–Chalmers Corp.,* 109 F.R.D. 546, 550 (S.D.Miss.1985); *Sullivan v. Stefanik,* 605 F.Supp. 258 (D.Ill.1985). The courts have also acknowledged that an attorney may be the person with the best information concerning nonprivileged matters relevant to a lawsuit. *NFA Corp.,* 117 F.R.D. at 85, n. 2, citing *Condon v. Petacque,* 90 F.R.D. 53 (N.D.Ill.1981).

■ There are good reasons to require the party seeking to depose another party's attorney to bear the burden of establishing the propriety and need for the deposition.

While the Federal Rules do not prohibit the deposition of a party's attorney, experience teaches that countenancing unbridled depositions of attorneys constitutes an invitation to delay, disruption of the case, harassment, and perhaps disqualification of the attorney ... In addition to disrupting the adversarial system, such depositions have a tendency to lower the standards of the profession, unduly add to the cost and time spent in litigation, personally burden the attorney in question, and create a chilling effect between the attorney and client. *NFA Corp.,* 117 F.R.D. at 84–85, citing *In re: Arthur Treacher's Franchisee Litigation,* 92 F.R.D. at 437–39; *Walker v. United Parcel Services,* 87 F.R.D. at 360; and *Shelton,* 805 F.2d at 1323. For these reasons, it is appropriate to require the party seeking to depose an opposing party's attorney to establish a legitimate basis for requesting the deposition, and to demonstrate that the deposition will not otherwise prove overly disruptive or burdensome. *NFA Corp.,* 117 F.R.D. at 85.[3]

■ The facts in the present case are more similar to the facts in *Johnston* than *Shelton.* Here, Attorney Marks was litigation counsel for Forcier and Machado in the underlying case. Although he is not lead counsel in the present case, he is serving as "associate counsel," and has assisted the attorneys from the Wright & L'Estrange law firm in preparing pleadings and in the discovery process. The role he will play at trial, if any, has not yet been determined. Attorney Neuville performed work for Attorney Marks in the underlying case. It appears that he is playing no role in the present case. Both Marks and Neuville are witnesses to, and participants in, events and communications regarding both the circumstances pertaining to the default judgment against Krieger, and the circumstances surrounding the ultimate assignment of Krieger's rights against American Casualty to Forcier and Machado.

Further, the events in question all took place prior to Attorney Marks' representa-

**3.** Implicit in this approach is that the court will regard the mere request to depose a party's attorney as constituting good cause for obtaining a Rule 26(c) protective order, unless the party seeking the deposition can show both the propriety and need therefor. *See, NFA Corp.,* 117 F.R.D. at 85.

tion of Krieger in the present action. American Casualty does not intend to inquire into any privileged matters between attorneys Marks or Neuville and Forcier and Machado. In addition, unlike the factual scenario in *Shelton*, the information sought by American Casualty through the proposed depositions of attorneys Marks and Neuville does not appear to involve attorney work product.

The reasons set forth by the court in *NFA Corp.* for requiring the party seeking the deposition to bear the burden of establishing both the propriety and need for the deposition apply with equal force in the present case. While permitting American Casualty to take the depositions of attorneys Marks and Neuville will not cause the disruption that would be engendered by the taking of depositions of a party's lead litigation counsel, the danger still exists that the attorney-client privilege and/or the work product doctrine may be implicated, particularly in view of the fact that Attorney Marks has represented Forcier and Machado throughout both the underlying and the pending litigation, and currently represents all three defendants/counterclaimants. Under these circumstances, the more appropriate and prudent course of action would be to require American Casualty to preliminarily justify the depositions of attorneys Marks and Neuville under the *Shelton* test.

Following this procedure will give this court the opportunity to resolve potential disputes and to limit, in advance, the scope of the depositions so as to avoid intrusions into attorney-client privileged areas or areas falling under the work product doctrine. *See, Southern Film Extruders, Inc., v. Coca-Cola Company*, 117 F.R.D. 559, 560–61 (M.D.N.C. 1987); *NFA Corp.*, 117 F.R.D. at 85.

## D. APPLICATION OF THE *SHELTON* TEST TO THE PRESENT CASE

■ Under *Shelton*, American Casualty may take the depositions of attorneys Marks and Neuville if it can establish that:

(1) No other means exist to obtain the information than to depose opposing counsel;

(2) The information sought is relevant and nonprivileged; and

(3) The information is crucial to the preparation of the case.

*Shelton*, 805 F.2d at 1327.

### 1. No Other Means Exist to Obtain the Information Sought

■ Krieger, Forcier, and Machado argue that because the proceedings and documentation concerning the default and default judgment are a matter of public record, and because "the best evidence of the assignment is the document itself," American Casualty cannot meet its burden of showing that no other means exist to obtain the information it seeks regarding either the default or the assignment.

Although some of the information pertaining to the default and default judgment are a matter of public record, much potentially relevant information is not. American Casualty maintains that Attorney Marks communicated with Krieger regarding Forcier and Machado's claims against Krieger prior to commencement of the underlying action. Further, it appears that Attorney Marks was instrumental in the events leading to the entry of the default judgment against Krieger. American Casualty raises questions regarding the amendment of the default request from $1,785,533.77 to $6,391,822.21. Forcier and Machado now seek to enforce this judgment against American Casualty through their counterclaim.

With regard to the assignment, American Casualty maintains that after the default judgment was entered against Krieger in the underlying action, Krieger assigned his rights against American Casualty to Attorney Marks *personally*. Ultimately, these rights were assigned to Forcier and Machado. American Casualty believes that Attorney Neuville prepared the assignment from Krieger to Attorney Marks, and that Neuville communicated with Krieger regarding this assignment.

It appears that attorneys Marks and Neuville may be the only persons who possess complete knowledge regarding the circumstances surrounding the default judgment against Krieger in the underlying action, and the assignment of Krieger's rights to Forcier

and Machado. As such, they may be the persons "with the best information concerning nonprivileged matters relevant to [this] lawsuit." *NFA Corp.*, 117 F.R.D. at 85 n. 2.

Krieger, Forcier, and Machado further argue that American Casualty can obtain the information it seeks through interrogatories, document requests, and depositions of other witnesses. Specifically, Krieger, Forcier, and Machado maintain that, through their depositions and other discovery, American Casualty has had a full opportunity to obtain whatever nonprivileged information it needs directly from them.

First, as stated above, attorneys Marks and Neuville are probably the only persons who possess complete knowledge regarding the circumstances surrounding both the default judgment and the assignment of Krieger's rights to Forcier and Machado. Therefore, depositions of the counterclaimants or other witnesses will not provide American Casualty with full information regarding these matters.

With regard to Krieger, Forcier, and Machado's contention that American Casualty can obtain the information it seeks through interrogatories, this court finds that neither interrogatories nor any other form of written discovery would be adequate. The information sought here by American Casualty is broad. It would be extremely difficult, if not impossible, to thoroughly cover the areas in question through interrogatories or written deposition questions. Written questions are not a satisfactory substitute for depositions upon oral examination in these circumstances. *See, Hay and Forage Industries*, 132 F.R.D. at 690–91.

### 2. The Information Sought is both Relevant and Nonprivileged

The events and communications leading up to the entry of the default judgment against Krieger in the underlying action and the assignment of Krieger's rights to Forcier and Machado, through Attorney Marks, are relevant because they form the basis of Forcier and Machado's counterclaim against American Casualty. In order to prevail on their counterclaim, Forcier and Machado will have to prove the validity of both the default

judgment and the assignment of Krieger's rights to them. American Casualty maintains that both the default judgment and the assignment of Krieger's rights to Forcier and Machado are defective. In addition, American Casualty theorizes that both the default judgment and the assignment were "infected" by agreements or understandings among Krieger, Forcier, and Machado, and that they are thereby rendered invalid. Given these circumstances, American Casualty should be afforded the opportunity to conduct discovery regarding both the default judgment and the assignment.

The information that American Casualty seeks through the depositions of attorneys Marks and Neuville is not privileged. The events and communications in question occurred before Marks and Neuville represented Krieger in any capacity. Further, the areas into which American Casualty has stated that it intends to inquire would not impinge upon matters protected by the attorney-client or work product privileges between attorneys Marks or Neuville and Forcier and Machado.

### 3. The Information Sought is Crucial to the Preparation of the Case

As stated above, Forcier and Machado's counterclaim against American Casualty is based upon the default judgment obtained against Krieger, and the subsequent assignment of Krieger's rights against American Casualty to Forcier and Machado. In order to prevail, Forcier and Machado must prove the validity of both the default and the assignment. American Casualty's defenses to this counterclaim include assertions that the default and/or the assignment are invalid. Therefore, full knowledge regarding the circumstances surrounding both the default judgment and the assignment of rights are crucial to American Casualty's preparation in this case.

This court finds that American has met its burden under the *Shelton* test.

### E. BURDENS ON THE PRESENT LITIGATION

■ Krieger, Forcier, and Machado also argue that allowing American Casualty to

depose Attorney Marks will be burdensome and disruptive. Specifically, they maintain that requiring Marks to submit to a deposition by opposing counsel will detract from Marks' ability to perform in this case because he will have to spend time both preparing for the deposition and being deposed. They also argue that allowing American Casualty's attorneys to depose Marks will have a negative impact on the relationships among counsel in this case.

It is true that allowing Attorney Marks' deposition to go forward will require him to spend time preparing for the deposition and in the deposition itself. However, this court does not believe that this will unduly burden the litigation process in this case. First, Attorney Marks is not lead counsel for defendants/counterclaimants. He has not been involved with the present litigation on a day-to-day basis. Second, the court can impose limits on both the scope and duration of his deposition. *See, Johnston,* 130 F.R.D. 348.

With regard to the potential negative impact on the relationships among the attorneys in this case, the court will rely upon counsels' professionalism to overcome any problem of this nature.

## IV.

### *CONCLUSION*

The depositions of attorneys Marks and Neuville may go forward, subject to a partial protective order limiting both the duration of the depositions and the scope of the questioning that will be permitted. The areas into which American Casualty may inquire will be limited to the facts and circumstances surrounding the entry of default judgment against Krieger in the underlying action, and the facts and circumstances surrounding the ultimate assignment of Krieger's rights against American Casualty to Forcier and Machado, as set forth in the accompanying order.

### *ORDER*

This matter having come before the court upon motion of plaintiff/counterdefendant to take the depositions of attorneys Ronald A. Marks and Stewart J. Neuville, and cross-motion of defendants/counterclaimants George Krieger, Anthony Forcier, and Lisa Machado for a protective order, pursuant to Federal Rule of Civil Procedure 26(c) to preclude these depositions; and

The court having considered the submissions of the parties and the arguments of counsel at a hearing on March 10, 1995; and

For reasons set forth in the Opinion accompanying this Order;

**IT IS HEREBY ORDERED** that plaintiff/counterdefendant American Casualty's motion to take the depositions of attorneys Marks and Neuville be granted, and that defendants/counterclaimants Krieger, Forcier, and Machado's motion for a protective order be granted in part. The depositions may go forward on a mutually convenient date, limited as follows:

1. *Deposition of Attorney Marks*

The deposition of Attorney Marks will be limited to six hours on one day. The questioning will be limited in scope to information within his knowledge of the circumstances pertaining to the entry of default judgment against Krieger in the underlying case, and the assignment of Krieger's rights against American Casualty to Attorney Marks and/or to Forcier and Machado, including:

a. Communications between Marks and Krieger and communications between Marks and Krieger's insurance broker, which occurred prior to the formation of an attorney-client relationship between Marks and Krieger in this action, pertaining to coverage under the insurance policy issued to Krieger by American Casualty;

b. Communications between Marks and Krieger, which occurred prior to the formation of an attorney-client relationship between Marks and Krieger in this action, pertaining to the default judgment and/or the assignment of Krieger's rights against American Casualty to Attorney Marks and/or to Forcier and Machado;

c. Facts pertaining to the entry of default judgment against Krieger in the underlying case; and

**592**

d. Facts pertaining to the assignment of Krieger's rights against American Casualty to Attorney Marks and/or to Forcier and Machado. No questions regarding Attorney Marks' background or experience will be permitted.

### 2. *Deposition of Attorney Neuville*

The deposition of Attorney Neuville will be limited to three hours on one day. The questioning will be limited in scope to information within his knowledge pertaining to the entry of default judgment against Krieger in the underlying case, and the assignment of Krieger's rights against American Casualty to Attorney Marks and/or to Forcier and Machado, including:

a. Communications among attorneys Neuville and Marks, and Krieger, which occurred prior to the formation of an attorney-client relationship between Marks and Krieger in this action, pertaining to the default judgment and/or the assignment of Krieger's rights against American Casualty to Attorney Marks and/or to Forcier and Machado;

b. Facts pertaining to the entry of default judgment against Krieger in the underlying case; and

c. Facts pertaining to the assignment of Krieger's rights against American Casualty to Attorney Marks and/or to Forcier and Machado.

As to both depositions, no questions pertaining to any communications occurring after Attorney Marks began representing Krieger in the present action will be permitted. In addition, no questions pertaining to either Marks or Neuville's knowledge of any other events or subjects will be allowed.

**IT IS SO ORDERED.**