QAD.INC, et al., Plaintiffs,

v.

ALN ASSOCIATES, INC., et al., Defendants.

No. 88 C 2246.

United States District Court, N.D. Illinois, E.D.

April 2, 1990.

Mark A. Cantor, Kevin J. Heinl, Southfield, Mich., for plaintiffs.

Robert E. Wagner, Alan L. Barry, Michael D. Lake, Wallenstein Wagner & Hattis Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

qad.inc and its principals Karl and Pamela Lopker (collectively "qad") and their lead counsel Edward Langs, Esq. ("Langs") have moved for a protective order to preclude the taking of Langs' deposition by defendant ALN Associates, Inc. and its principals Sally and Mike Allen (collectively "ALN") under Fed.R.Civ.P. ("Rule") 26(c). For the reasons stated in this memorandum opinion and order, qad's motion is denied.

Initially qad's motion was triggered in part by its legitimate concerns stemming from the unlimited scope of the deposition subpoena that had been served on Langs. Unfortunately it was also based in part on some impermissible considerations—the combative spirit that has marked every phase of this litigation from the outset, plus a generalized sense of inconvenience to Langs.

When the first of those factors (that relating to scope) was properly explained away by ALN's response to qad's motion, qad should have subsided by withdrawing its motion. It did not, and this Court has accordingly been called upon to rule. Because qad's motion reflects a kind of misperception as to the general impermissibility of any discovery targeting lawyers, this Court's oral bench ruling is being converted to written form to provide a public correction of a point of view that may be commonly held.

Everyone suffers inconvenience when his or her deposition is taken. Embroilment in litigation is time consuming. It is expensive for those who are even tangentially touched by it. All those considerations are independent of the identity of the witness who may be confronted with a deposition subpoena.

There are also some special reasons for discouraging any widespread tendency to target lawyers as the subjects of discovery, particularly where those lawyers are acting as counsel in the underlying litigation. For one thing, the resulting application of relevant ethical principles may be disruptive of the litigation itself. ABA Code of Professional Responsibility ("Code") DR 5–101(B) and 5–102 may force disqualification of a lawyer-witness:

> DR 5–101(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
>
> (1) If the testimony will relate solely to an uncontested matter.
>
> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>
> (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
>
> (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.
>
> \*    \*    \*    \*    \*    \*
>
> DR 5–102(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).
>
> DR 5–102(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

That concept has been carried forward with some corrective modifications into Rule 3.7 of the proposed Model Rules of Profession-

al Conduct (not yet in effect in this District Court,[1] though recently approved by the Illinois Supreme Court to take effect for Illinois practitioners August 1, 1990).

Even apart from that possibility of lawyer disqualification, the taking of a lawyer's deposition poses the potential for invasion of client confidences and secrets (things that are insulated from disclosure both by the attorney-client privilege and by Code DR 4-101 and proposed Model Rule 1.6) and also for invasion of lawyer thought processes (which are insulated from disclosure by the work-product rule). But it is a mistake to translate those entirely legitimate needs for the protection of lawyer-client privileged communications and of lawyers' privileged thought processes into a kind of global protection of lawyers as a privileged class. Privileged documents do not equate to privileged classes of people.

Just the night before this opinion was announced orally, this Court received the slip opinion of our Court of Appeals issued March 27 in *In re Grand Jury Proceeding*, 898 F.2d 565 (7th Cir.1990), in which that court upheld as privileged the identity of clients who had paid cash fees in the context of criminal case representation. In the course of that decision the Court of Appeals said (*id.* at 567 (citations omitted)):

> The underlying theory of the attorney-client privilege is based on the premise "that encouraging clients to make fullest disclosure to their attorneys enables the latter to act more effectively, justly, and expeditiously, and that these benefits outweigh the risks posed by barring full revelation in court".... Because "the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." ...The attorney-client relationship itself does not create a "cloak of protection draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." ...Rather, the privilege protects only confidential communications by a client to an attorney made in order to obtain informed legal assistance.

To translate those generalized principles into the specifics of qad's current motion, it has already been said that when that motion was originally filed it partially reflected a quite legitimate concern in the areas just discussed: It was responsive to what appeared on its face to be a deposition subpoena, directed to qad's lead counsel Langs, that was both unconditional and unlimited in scope. But ALN's response to the motion immediately confirmed that it was seeking to discover through Mr. Langs *only* such communications as were clearly and by definition not privileged—all made to third parties. Nor were any work product considerations implicated in what ALN was looking for.

That being so, it bears repeating that qad should simply have (to paraphrase Longfellow's *The Day Is Done*, stanza 11) "folded its legal tent and silently stolen away." Instead qad continued to urge that ALN should be forced to the roundabout device of learning the desired information from the third parties with whom Langs had communicated, rather than by inquiring of Langs himself. Indeed, it is ironic that the only way in which ALN could even have done that would be by finding out from Langs, in the first place, just who those third parties are. But any such requirement would be less efficient, more expensive, more time consuming—in short, it would have all the vices that we tend to associate with the present pattern of overextensive discovery that is constantly (and justifiably) decried in litigation today.

qad seeks to rely on the rule stated in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986):

> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances

---

1. This District Court's General Rule 3.54(b) continues to identify the Code as the source defining the standards for potential lawyer discipline (a matter now under review in light of the more recent promulgation of the Model Rules). Not surprisingly, the case law in this District (and indeed in our Court of Appeals as well) has looked to those same standards of lawyer conduct in dealing with the closely-related subject of lawyer disqualification.

may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, *see, e.g., Fireman's Fund Insurance Co. v. Superior Court,* 140 Cal.Rptr. 677, 679, 72 Cal.App.3d 786 (1977); (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

This Court's disagreement with a principle stated in such broadbrush terms is respectful but profound. What *Shelton* says may fairly (and properly) reflect an attitude of protecting our brethren at the bar, all other things being equal. But stated as a rule of law it must be viewed as wrong, and it is entirely understandable that it evoked a strong dissent from District Judge Richard Battey, sitting with the Eighth Circuit by designation (*id.* at 1330).

Where it is really true that information may be derived at least as readily from a source other than the lawyer, as was the case dealt with by this Court's colleague Honorable Nicholas Bua in *Marco Island Partners v. Oak Development Corp.,* 117 F.R.D. 418 (N.D.Ill.1987), the perspective expressed by Judge Bua is plainly appropriate (*id.* at 419–20):

> Defendants' arguments notwithstanding, the Federal Rules provide courts with the discretion to limit pretrial discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(1). It seems particularly appropriate to exercise this discretion when a party seeks to depose its opponent's attorney. Such a deposition provides a unique opportunity for harassment; it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness. Mindful of this potential for harassment, some courts have shown a greater inclination to quash the depositions of opposing counsel on the ground that they are duplicative.

But in the circumstances portrayed here, this Court considers it inappropriate to address with a blanket protective order the wholly speculative problems that might be (but are unlikely to be) posed by the Langs deposition. Instead the quite different approach adopted by another of this Court's colleagues, Honorable Marvin Aspen, in *Hunt International Resources Corp. v. Binstein,* 98 F.R.D. 689, 690–91 (N.D.Ill. 1983) applies with even greater force here. As the next paragraph reflects, this Court subscribes wholeheartedly to a procedure that rejects any prior restraint in favor of permitting the deposition to go forward, with any individualized objections to be dealt with during its regular course.

This Court therefore rejects qad's motion for a protective order. As soon as Langs has recovered sufficiently from his recent major surgery to be able to handle the giving of deposition testimony without physical risk or discomfort, the deposition will proceed. As and when issues of lawyer-client privilege or work product arise during the course of that deposition (something that seems unlikely in view of the scope of discovery described by ALN), those claims may be raised by qad and will promptly be resolved by this Court during the course of the examination.