**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No.  97-3034

_____

United States of America,                    *
                                             *
            Appellant,                        *  Appeal from the United States
                                             *  District Court for the
      v.                                      *  Northern District of Iowa.
                                             *
Roger D. Workman,                             *
                                             *
            Appellee.                         *
                                             *

_____

Submitted: December 9,1997
Filed: March 17, 1998

_____

Before McMILLIAN, MAGILL, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

      Roger Workman was charged with numerous counts of converting government property in violation of 18 U.S.C. § 641, for diverting the proceeds of railroad retirement benefit checks issued in his father's name. The case is now before the court on an interlocutory appeal brought by the government to challenge certain evidentiary rulings of the district court in advance of Roger Workman's second trial on the charges.  We reverse and remand.

Carl Workman was a retired railroad employee and the father of Roger and Patricia Workman. Carl lived in Mason City, Iowa at the time of his death in 1988, and his will named Roger as executor of his estate and provided that it be evenly divided between the two children. As a retired railroad employee, Carl had received regular retirement payments from the Railroad Retirement Board (RRB), and retirement checks continued to be mailed in his name for more than six years after his death. Roger deposited the checks in a credit union in Ames, Iowa, with the endorsement, "Carl C. Workman, by Roger D. Workman" and the word "executor" written above his name. All the checks were deposited through an automated teller machine which did not require other documentation or a face to face transaction. Roger never contacted the RRB about his father's death or the continuing receipt of the checks, nor did he give any of the proceeds to Patricia or disclose them on his own tax returns. It also does not appear that the funds were ever paid into the estate.

In October, 1994 the Des Moines district office of the RRB contacted Roger Workman to inquire about a questionnaire that had been sent to Carl Workman but never returned. Roger stated that his father had died "in August" but that he could not give the exact date of death. The RRB later learned that Carl Workman had died in August of 1988. It then immediately stopped issuing benefits checks and initiated a criminal investigation.

On March 15, 1995, two agents from the RRB Office of the Inspector General visited Roger Workman and asked if they could question him. Roger agreed to talk and answered several of their questions after being advised of his Miranda rights. He said that he thought his father's estate was entitled to benefits checks for a period of twenty five years and that he had endorsed the checks as executor of the estate on the advice of his attorney, Charles Levad. He also said that Levad had failed to include the checks in the probate inventory of the estate.

Roger Workman was indicted on sixty eight counts of converting government property and went to trial on forty two counts after the others were dismissed because of the statute of limitations. During his opening statement defense counsel asserted that Workman was "the victim of bad lawyering," and during cross-examination he elicited testimony from an RRB agent that Workman claimed he cashed the checks on the basis of Levad's advice. The government then called Levad to testify, but the district court ruled that the attorney client privilege barred testimony from him about the content of his advice to Roger on the legality of negotiating the benefits checks. The court indicated, however, that Levad could be asked whether he gave advice to Roger on the subject of endorsing the checks. Levad subsequently testified that he advised Workman not to negotiate the checks without first contacting the RRB and that he therefore did not contact the RRB himself. Workman moved for a mistrial on the grounds that this testimony included privileged information, and the district court granted the motion.

Before the start of Workman's new trial, the government moved in limine either to bar Workman from claiming that he had relied on Levad's advice to cash the checks or to permit Levad to testify about his advice. The district court denied the government's motion and indicated in addition that it would not admit evidence that Workman had not shared the check proceeds with his sister[1] or disclosed them on his tax returns.

The government appeals from these rulings. It argues that evidence of Levad's advice about negotiating the checks should be admitted because Workman waived the attorney client privilege by discussing his advice with RRB investigators and by asserting the privilege in his defense. It also argues that the evidence about Workman not sharing the proceeds or disclosing them on his tax returns demonstrates his intent to steal or convert government property. Workman responds that he did not voluntarily

---

[1]This evidence was admitted without objection in the first trial.

waive the privilege by talking about his attorney's advice with RRB investigators and that his advice of counsel defense did not place privileged communications in issue. Workman also says that it has not been shown that Patricia had any entitlement to the proceeds and that he cashed the checks as executor of his father's estate so they did not need to be reported on his personal tax returns.

The exclusion of evidence on the basis of the attorney client privilege is reviewed for abuse of discretion. <u>Charles Woods Television v. Capital Cities/ABC</u>, 869 F.2d 1155, 1161 (8th Cir. 1989). Voluntary disclosure of attorney client communications expressly waives the privilege, <u>Lutheran Medical Center v. Contractors Health Plan</u>, 25 F.3d 616, 622 (8th Cir. 1994); <u>In re Grand Jury Proceedings Subpoena to Testify to Wine</u>, 841 F.2d 230, 234 (8th Cir. 1988). The waiver covers any information directly related to that which was actually disclosed. 8 C. Wright & A. Miller, Federal Practice and Procedure § 2016.2.

Workman argues on appeal that the statements he made to RRB investigators were not voluntary because they were made in a coercive environment and that he therefore did not waive the privilege. The district court did not make any explicit finding on whether or not the statements were voluntary because the argument that the statements were involuntary was not raised in the trial court. The district court excluded the testimony on the grounds that the scope of Levad's proposed testimony was too broad and could result in an unfair conviction.

An argument not raised in the district court will generally not be considered on appeal, and Workman failed to challenge the voluntariness of his disclosures until the government's appeal. <u>See</u> <u>Unigroup v. O'Rourke Storage & Transfer</u>, 980 F.2d 1217, 1222 (8th Cir. 1992). Moreover, his failure to provide any legal support for this argument or to discuss it with specificity is another bar to its consideration. <u>Sweet v. Delo</u>, 125 F.3d 1144, 1159 (8th Cir. 1997). Even if the argument were to be considered, however, it does not have much support in the record. The investigating

officers testified at the first trial that Workman freely agreed to talk with them and informed them that he cashed the checks as executor of his father's estate based on Levad's advice, and the record contains considerable evidence of voluntariness.[2]

The attorney client privilege may also be implicitly waived, Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985), and one way that is done is by raising attorney advice as a defense. Sedco International, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982). During his opening statement and his questioning of Levad, Workman's trial counsel placed Levad's advice in issue by asserting that Workman had relied on the advice in cashing the checks. Workman cannot selectively assert the privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with Levad for his own benefit. U.S. v. Bilzerian, 926 F.2d 1285, 1292 (8th Cir. 1991). The attorney client privilege cannot be used as both a shield and a sword, id., and Workman cannot claim in his defense that he relied on Levad's advice without permitting the prosecution to explore the substance of that advice.

The government seeks to introduce evidence that Workman failed to share the proceeds of the benefits checks with his sister or to report them on his income tax in order to prove intent. It bears the burden of demonstrating that Workman knowingly and intentionally converted government funds by cashing the benefits checks issued in his father's name. 18 U.S.C. § 641. Workman argues that the evidence should be excluded because it is not probative of intent, that he had no duty to share the proceeds

---

[2]Workman made the statements in his own home with his wife present after agreeing to talk with the investigators and after being informed of his Miranda rights. The questioning was not prolonged, and he was not placed under arrest. The possibility of criminal penalties was not mentioned until Workman's wife said the investigators were treating him like a criminal, and the agents responded that improperly cashing government checks could trigger criminal penalties. See United States v. Watson, 423 U.S. 411, 424-25 (1976); Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).

with his sister or disclose them on his income tax returns, and that it was inadmissible under Federal Rule of Evidence 404(b).

The evidence the government seeks to introduce has strong probative value because it could support an inference that Workman intended to apply the funds to his own use and to hide their receipt because he was aware he was not entitled to them. The evidence need not be excluded as evidence of prior bad acts or other crimes under Rule 404(b) because it has relevance beyond simply showing Workman's criminal disposition, <u>U.S. v. Street</u>, 66 F.3d 969, 976 (8th Cir. 1995), and clarifies the course of conduct involved in the charged crimes, <u>United States v. Williams</u>, 95 F.3d 723, 731 (8th Cir. 1996). Workman's handling of the funds shows his intent to keep their disposition a secret and is relevant to the element of intent to retain them wrongfully.

In reviewing the rulings of the district court, we have the advantage of the record made during the first trial as well as developed arguments on the evidentiary issues. After our review of the whole record, we conclude that the challenged evidentiary rulings cannot be sustained. Because Workman waived his attorney client privilege and the government seeks to introduce evidence relevant to the charges in the indictment, the challenged pretrial rulings of the district court are reversed. The case is remanded for proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.