SPARTON CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–580C.

United States Court of Federal Claims.

Aug. 9, 1999.

Steven Kreiss, Washington, D.C., for plaintiff.

Gary L. Hausken, Washington, D.C., with whom was Acting Assistant Attorney General David W. Ogden, for defendant.

## ORDER

MEROW, Senior Judge.

This patent infringement dispute is before the Court upon defendant's November 10, 1998 motion to quash the Notice of Deposition naming Louis Allahut, Esq. as the proposed deponent. Defendant argues that since Mr. Allahut previously served as its attorney in this matter, plaintiff must preliminarily justify the propriety and need for the requested deposition by demonstrating that the testimony is relevant, crucial to the case and not available through any other means. Urging the Court to find there has been no such showing, defendant asks for a protective order precluding the deposition in its entirety pursuant to Rule 26(c) of the Rules of the Court of Federal Claims ("RCFC"). In the alternative, defendant requests the Court to supervise the deposition of Mr. Allahut. Plaintiff disputes the government's position and argues that, notwithstanding the fact that Mr. Allahut is an attorney, defendant has still failed to demonstrate "good cause" for a protective order. For the reasons stated below and subject to the conditions described herein, defendant's motion is granted.

## BACKGROUND

### 1. Facts

Plaintiff, Sparton Corporation ("Sparton"), alleges that the United States Department of the Navy ("Navy") engaged in the unauthorized manufacture or use of patented inventions. The inventions were certain component parts of antisubmarine warfare sonobuoys. Sparton claims to be entitled to compensation based upon allegations that the Navy improperly procured sonobuoys containing the patented component parts from Sparton's competitors. In February 1981, Sparton filed Administrative Claim No. S–153 ("Claim S–153") against the Navy seeking to recover damages for the alleged infringement. In February 1982, the Navy wrote and advised Sparton that the "on-sale bar" was believed to preclude liability for the alleged patent infringement.[1]

Notwithstanding the Navy's stated intention to rely upon the "on-sale bar" as an affirmative defense, in August 1982, Claim S–153 was assigned to Louis Allahut, Esq., an attorney with the Office of the Chief of Naval Research. *See* Declaration of Louis Allahut, Esquire, dated November 10, 1998, and annexed to Def.'s Mot. as Ex. D ("Allahut Decl.") at 1. With respect to administrative claims, such as Claim S–153, Mr. Allahut's responsibilities "included investigating the factual and legal bases for such claims; making recommendations with respect to settlement and denial of claims; negotiating proposed settlement terms on behalf of the Navy; and, recommending approval or denial of proposed settlement offers." Allahut Decl. at 2. Notwithstanding his involvement in negotiations, Mr. Allahut did not have authority to approve settlement agreements. Allahut Decl. at 2. Authorization to act upon any settlement agreement recommended by Mr. Allahut was reserved to the Office of the Chief of Naval Research. Allahut Decl. at 2.

On April 22, 1988, approximately one year after negotiations to resolve Claim S–153 had been completed and in response to plaintiff's request for a status report, Mr. Allahut sent a letter to Sparton indicating that a reduction of the previously negotiated proposed settlement figure was appropriate, based upon certain changes of fact which had been assumed at the time of settlement negotiations. Opp'n at Ex. 8. Mr. Allahut included in this correspondence, copies of the tabulations and calculations from which he derived the revised proposed settlement figure. Opp'n at Ex. 8.

Later that year, in correspondence dated July 18, 1988, Mr. Allahut wrote to the Navy Comptroller, outlining the proposed settlement agreement and soliciting the Comptroller's input regarding "any problem which would prevent . . . [the release of] funds . . ." Opp'n at Ex. 11. At plaintiff's request, a copy of this internal Navy correspondence was also forwarded to Sparton. Opp'n at Ex. 10. The funds were apparently not released.

In March 1990, Sparton purportedly was informed that the Navy intended to revisit the issue of the "on-sale bar" defense. Frustrated, in September 1991, Sparton sought the assistance of a Senator in an effort to obtain an explanation for the Navy's decision to re-examine the claim. The Navy responded that the previously negotiated settlement proposal was not final because Mr. Allahut was without authority to settle the claim. Further, the Navy explained that its renewed interest in the investigation of Claim S–153 was in response to newly uncovered case law which was considered instructive with regard to Sparton's claim. The Navy also claimed it had previously requested but had not yet received additional information from Sparton and could not render a final settlement determination until that data was received.

After plaintiff commenced litigation in this Court, the Navy formally denied Claim S–153. Sparton then initially noticed the deposition of Mr. Allahut. The government, citing various privileges and protections of attorney

---

1. The relevant portion of the United States Code provides in pertinent part:

 "A person shall be entitled to a patent unless—
 (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent on the United States . . ."

 35 U.S.C. § 102(b) (1994).

work product, objected to the proposed deposition. Plaintiff did not pursue the deposition until, the instant matter arose after Sparton served a second notice of its intention to depose Mr. Allahut pursuant to RCFC 30(b)(1). The government then filed this motion seeking to quash the deposition notice and asking the Court to issue a protective order precluding Sparton from taking Mr. Allahut's testimony pursuant to RCFC 26(c).

## 2. The Parties' Contentions

The government argues that in addition to having previously handled Claim S–153 on behalf of the Navy during the attempted settlement, Mr. Allahut continues in his role as the government's attorney and assists the Department of Justice in the defense of this litigation and in preparation for trial.[2] The government also asserts that the deposition of its attorney in this matter would be burdensome and disruptive, and would add to the costs and time spent in this litigation. Further, since any knowledge Mr. Allahut has about the case is claimed to have been obtained in his professional capacity as the Navy's attorney, the government argues that even seemingly innocuous questions would intrude upon the protections of the attorney-client privilege and the attorney work product doctrine. The government urges this Court to follow the holdings of those jurisdictions which have held that an opposing attorney's deposition should be allowed only under limited circumstances. Specifically, the government asks the Court to require Sparton, as the party seeking to depose another party's attorney to demonstrate the propriety and need for the deposition. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986); *see Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir.1995) (utilizing *Shelton* test to preclude deposition of counsel); *Dunkin' Donuts, Inc. v. Mandorico, Inc.*, 181 F.R.D. 208, 210 (D.Puerto Rico

1998); *American Cas. Co. of Reading, Pennsylvania v. Krieger*, 160 F.R.D. 582, 589–90 (S.D.Cal.1995); *West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302–03 (S.D.Fla.1990); *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85–86 (M.D.N.C.1987).[3] Further, the government urges the Court to find that Sparton has failed to establish that the deposition of Mr. Allahut is both appropriate and necessary.

In opposition, Sparton contends that it is the government which has failed to demonstrate "good cause" for the requested protective order pursuant to RCFC 26(c), following the rule enunciated by those Courts which have held that under a strict interpretation of the Rules governing discovery, the deposition of an attorney is no different than any other deposition. *See Rainbow Investors Group, Inc. v. Fuji Trucolor Missouri, Inc.*, 168 F.R.D. 34, 36 (W.D.La.1996); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 247–49 (D.Kan.1995); *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 161 F.R.D. 309, 313 (E.D.Pa. 1995); *Kaiser v. Mutual Life Ins. Co. of New York*, 161 F.R.D. 378, 382 (S.D.Ind.1994); *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352–53 (D.N.J.1990).

Sparton argues that the requested deposition is justified, because it is the only means of eliciting Mr. Allahut's presumably relevant knowledge of the background contractual and technical materials he reviewed during his investigation of Claim S–153. Sparton also contends that the government waived any privilege which might have applied because the plaintiff was provided with copies of some correspondence containing purportedly protected information and authored by Mr. Allahut during final stages of negotiating Claim S–153. Based upon the allegations that the protections of the attorney work product doctrine and the attorney-client privilege have

---

**2.** Once this action was commenced by filing of the complaint in this Court, responsibility for defending the interests of the United States shifted to the Department of Justice pursuant to 28 U.S.C. § 516.

**3.** This decision considers several provisions of the RCFC regarding discovery and protective orders, specifically, RCFC 26 and RCFC 30. The cited provisions are virtually identical to Rule 26 and Rule 30 of the Federal Rules of Civil Procedure ("FRCP"). This Court considers interpretations of the FRCP in applying analogous provisions of the RCFC. *Deuterium v. United States*, 19 Cl.Ct. 697, 700 n. 3 (1990).

been waived by voluntary disclosure, Sparton contends that Mr. Allahut's deposition should be permitted.

## DISCUSSION

The issue of whether, and under what circumstances, a protective order entirely precluding the deposition of opposing counsel would be appropriate appears to be one of first impression in this Court.

Under the broad rules of discovery, once an action has been commenced, "any party may take the testimony of any person, including a party, by deposition upon oral examination." RCFC 30(a). Unless otherwise limited by the Court, discovery is permitted upon "any matter, not privileged, which is relevant to the subject matter involved in the pending action." RCFC 26(b)(1). Notwithstanding the "protect[ion] against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation," the rules do not specifically prohibit or otherwise limit depositions of counsel. RCFC 26(b)(2); *N.F.A. Corp.*, 117 F.R.D. at 85. "Attorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from becoming a source for discovery by virtue of their license to practice law or their employment by a party to represent them in litigation." *United Phosphorus Ltd.*, 164 F.R.D. at 248.

No matter how broadly the rules governing discovery are interpreted, they are not without limitations. *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S.Ct. 385, 91 L.Ed. 451 (1947). "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed.Cir.1990) (citations omitted). The Court has discretion to limit or preclude pre-trial discovery if it is determined that "justice requires ... [the] protect[ion of] a party or person from annoyance, embarrassment, oppression, or undue burden or expense ..." RCFC 26(c). Nevertheless, orders totally quashing an entire deposition in advance of an appearance by

the proposed deponent are rarely granted. *Micro Motion, Inc.*, 894 F.2d at 1328; *Dunkin' Donuts Inc.*, 181 F.R.D. at 210; *West Peninsular Title Co.*, 132 F.R.D. at 302.

Pursuant to RCFC 26(c), the party seeking to shield itself from discovery bears the burden of demonstrating that "good cause" exists for a protective order. "Good cause" requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir.1995) (defining "good cause" for purposes of FRCP 26(c)); *Johnston Dev. Group, Inc.*, 130 F.R.D. at 352–53 (suggesting factors for determining "good cause"). Some federal Courts in other jurisdictions have decided that a presumption of "good cause" is implicit when a party seeks to preclude its own attorney's deposition testimony. *Dunkin' Donuts, Inc.*, 181 F.R.D. at 210; *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 594 (N.D.N.Y.1989); *West Peninsular Title Co.*, 132 F.R.D. at 302; *N.F.A. Corp.*, 117 F.R.D. at 85. This presumption may be overcome if "the party seeking the deposition can show both the propriety and need for the deposition." *West Peninsular Title Co.*, 132 F.R.D. at 302; *N.F.A. Corp.*, 117 F.R.D. at 85.

Even those Courts which have not gone so far as to find "good cause" to be implicit, have required "the party seeking an attorney's deposition [to] make at least a modest showing that the deposition is of significant utility or practical necessity." 7 James Wm. Moore, *Moore's Federal Practice*, § 30.03[5] at 30–24 (3d ed.1997). For example, in many of the cases cited by plaintiff in support of utilizing a strict interpretation of Rule 26(c) to determine whether the deposition of opposing counsel should be permitted, it was first determined that the attorney had independent knowledge of the facts underlying the litigated cause of action before depositions of opposing counsel were permitted. *See, e.g., Rainbow Investors Group, Inc.*, 168 F.R.D. at 38 (permitting deposition of attorney due to his involvement as a negotiator in business activity prior to litigation); *United*

*Phosphorus, Ltd.,* 164 F.R.D. at 250 (permitting attorney to be deposed because he was involved in underlying facts which led to litigation); *Frazier,* 161 F.R.D. at 313–18 (allowing deposition of opposing counsel concerning his own involvement in surveillance of his client in light of allegations that such surveillance was illegal); *Kaiser,* 161 F.R.D. at 382 (finding deposition of attorney appropriate after determining that he was involved in underlying facts as either an actor or a witness); *Bogan v. Northwestern Mut. Life Ins. Co.,* 152 F.R.D. 9, 14 (S.D.N.Y.1993) (permitting deposition of opposing counsel because that attorney had concededly participated in disputed pre-litigation events which relate to the issues raised in litigation); q*ad.inc. v. ALN Assocs., Inc.,* 132 F.R.D. 492, 495 (N.D.Ill.1990) (ordering deposition of opposing counsel after determining that none of items sought from counsel were likely to reveal privileged material); *Johnston Dev. Group, Inc.,* 130 F.R.D. at 352–56 (concluding that deposition was warranted because attorneys' participation in disputed events was focus of litigation).

In this case, the parties concede that Mr. Allahut does not have independent or first hand knowledge of the facts, nor has he been directly involved in the events giving rise to the alleged patent infringement. Rather, any information Mr. Allahut might have would have been conveyed to him by his client, the Navy, or learned in the course of investigating the alleged patent infringement in preparation for litigation upon the issues presented in Claim S–153. *Deuterium Corp. v. United States,* 19 Cl.Ct. 697, 701 (1990) (filing administrative claim carries entitles government to reasonable expectation of litigation).

Sparton claims that Mr. Allahut has knowledge of: (1) central factual issues concerning Navy sonobuoy contractor contracts, (2) specific infringing parts incorporated into competing sonobuoys, (3) on-sale Navy and Sparton dealings which defendant alleges invalidate Sparton's patents, (4) copying of the patented inventions by infringing sonobuoy contractors, (5) sales figures of infringing sonobuoys, and (6) Navy testing of Sparton's inventions relating to reduction to practice.

Opp'n at 9. Sparton also contends that Mr. Allahut is the only source of the "background contractual and technical materials he reviewed to resolve Claim S–153, and the communications he had with government employees (some of whom are deceased) and contractors on which he based his validity, infringement and damages decision with regard to [C]laim S–153." Opp'n at 6. At the heart of Sparton's motion is a demand for disclosure of Mr. Allahut's preparation for litigation of Claim S–153, a request punctuated by Sparton's claims that "[o]nly Mr. Allahut knows the background material he reviewed and information he obtained before deciding to recommend settlement of the claim." Opp'n at 6.

The Supreme Court considered a similar inquiry when it decided that an implicit burden must be placed "on the one who would invade that privacy [of an attorney's course of preparation] to establish adequate reasons to justify production." *Hickman,* 329 U.S. at 512, 67 S.Ct. 385. Although the Supreme Court has not enunciated a standard for determining which of an attorney's preparatory materials might be appropriately disclosed, the Eighth Circuit developed a three part test, under facts similar to those before the Court in this case, which is instructive for determining whether Sparton has offered sufficient justification to warrant a deposition of Mr. Allahut. *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986).

In *Shelton,* the attorney acting as supervising in-house counsel for the defendant corporation was deposed. *Id.* at 1325. However, she refused to answer questions regarding the existence of certain documents she may have reviewed in the course of developing the corporation's defense. *Id.* The corporation offered to permit plaintiff to depose corporate officials who were not attorneys in its litigation department. *Id.* at 1327. Plaintiff refused, contending that one purpose behind the deposition questions was to determine whether the corporation had truthfully and fully complied with plaintiff's document requests. *Id.* Defendant's attorney claimed that if she answered and revealed her knowledge of certain documents, reviewed in her role as in-house counsel for

the corporation, plaintiff's counsel would have inappropriately gained insight into her mental impressions of the corporation's position in that litigation. *Id.* at 1328. The Court of Appeals for the Eighth Circuit agreed, overturning the decision of the District Court, and precluded the plaintiff from pursuing that line of questioning. *Id.* In so doing, instead of ruling the requested information was simply attorney work product, the Court developed a test for determining whether to permit the deposition of an attorney whose participation was limited to the role of opposing counsel. *Id.* at 1327.

Pursuant to the *Shelton* test, Mr. Allahut's deposition would be appropriate and necessary if Sparton could demonstrate that (1) no other means exist to obtain the information than to depose Mr. Allahut; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of Sparton's case. *Shelton,* 805 F.2d at 1327–28; *see Boughton,* 65 F.3d at 829; *Dunkin' Donuts, Inc.,* 181 F.R.D. at 212; *American Cas. Co. of Reading, Pennsylvania,* 160 F.R.D. at 589–90; *N.F.A. Corp.,* 117 F.R.D. at 86.

### The *Shelton* Test

#### (1)

With regard to the first part of the *Shelton* test, it is considered that, notwithstanding plaintiff's assertions that defendant's attorney is its sole source of the "background contractual and technical information" it seeks in this case, Sparton has not demonstrated that an adequate effort was made to obtain the information it seeks from alternate sources before seeking to depose Mr. Allahut. The knowledge plaintiff attributes to Mr. Allahut appears to be the sort of information which a properly prepared attorney for either party would be expected to know after having culled through documents, interviewed potential witnesses and those government employees and contractors who may have participated in the activities which ultimately led to the filing of Claim S–153. Sparton asserts there is no better deponent than Mr. Allahut for unearthing the evidence the government relied upon to prepare itself for negotiating the proposed settlement.

Based upon the facts presented, it is considered that Mr. Allahut may have all the information Sparton seeks, and may even know what motivated the government to "scuttle" the proposed settlement agreement after negotiations were complete. However, Sparton has not demonstrated that the information sought was not available from other potential witnesses who were not directly involved in counseling parties to this litigation. The failure to show that other avenues of discovery have been exhausted necessarily detracts from Sparton's argument that the information sought is not available elsewhere. *Boughton,* 65 F.3d at 830–31; *Dunkin' Donuts Inc.,* 181 F.R.D. at 211–12 (requiring exploration of other available sources before permitting deposition of attorney). In the absence of a definitive showing otherwise, it is determined that Sparton has failed to establish that the proposed deposition of the government's attorney is the *only* means of determining which background contractual and technical materials would have supported the government's settlement position.

#### (2)

With regard to the second element of the *Shelton* test, Sparton concedes that the deposition testimony it seeks may be protected by either the attorney work product doctrine or the attorney-client privilege. However, Sparton asserts that in the course of negotiating the proposed settlement, the government has revealed privileged communications to Sparton and therefore, "all joint defense and Navy administrative claim activities (and documents) relating to the issues of validity, infringement and damages, for which the defendant has asserted a privilege, are waived and can be interrogated in the Allahut deposition." Opp'n at 7. Therefore, Sparton deduces, the testimony Mr. Allahut may provide, would be non-privileged.

The government disputes Sparton's allegations and argues that it has not disclosed privileged information, no waiver has occurred and there is no basis for ordering, through the deposition of Mr. Allahut, the disclosure of interviews, working papers or communications which led to the recommendation for settlement. Moreover, the gov-

ernment contends that the attorney-client privilege does not apply to the items which Sparton alleges waived the privilege.

### a. Attorney Work Product Doctrine

■ The purpose of the attorney work product doctrine, codified in part at RCFC 26(b)(2), is to protect counsel's mental processes so that the attorney can analyze and prepare for the client's case without interference from an opponent. 6 James Wm. Moore, *Moore's Federal Practice* § 26.70[1] at 26–207 (3d ed.1998); *Carter v. Gibbs,* 909 F.2d 1450, 1451 (Fed.Cir.1990); *see also Republic of Philippines v. Westinghouse Elec. Corp.,* 132 F.R.D. 384, 389–90 (D.N.J.1990) (stating that purpose of work product doctrine is to shield adversary system from abuse).

Two types of attorney work product have evolved. The first provides qualified immunity from discovery for documents and tangible things which were "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." RCFC 26(b)(2). The protection is said to be qualified because production of those items may be compelled upon the moving party's showing of prejudice, "substantial need" or "undue hardship" in attaining substantially similar materials by other means. *Id.* The party seeking discovery under RCFC 26(b)(2) has the burden of demonstrating the protection is justified. *Hickman,* 329 U.S. at 509, 67 S.Ct. 385; *see also United Phosphorus,* 164 F.R.D. at 248 (discussing analogous provision).

■ On the other hand, the opinion work product doctrine precludes discovery of the mental impressions, conclusions, opinions or legal theories of an attorney. The reason for this is that "proper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman,* 329 U.S. at 510–11, 67 S.Ct. 385. Accordingly, an attorney's memory, notes and impressions of oral statements of witnesses interviewed in the course of preparing for litigation are also a form of opinion work product which merits special protection. *Up-*

*john Co. v. United States,* 449 U.S. 383, 400–01, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (holding that to extent not covered by attorney-client privilege, evaluation of witness statements protected by attorney work product doctrine). The selection and compilation of documents by counsel in preparation for pretrial discovery and litigation has repeatedly been held to fall within the highly protected category of opinion work product. *Shelton,* 805 F.2d at 1329 (holding adversary is precluded from forcing an attorney to identify the items relied upon to develop its legal theories of the case); *Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.1985).

■ As outlined earlier, Sparton wants Mr. Allahut to identify and explain his rationale for relying upon the group of background contractual and technical items he reviewed in preparing to negotiate the proposed settlement agreement and subsequent revisions thereto. Plaintiff also wants to know about Mr. Allahut's communications with government employees and contractors.

Obviously Mr. Allahut's mental impressions and legal strategy could be disclosed if he was compelled to testify about the evidence he considered reliable with regard to the issues and the Navy's defenses in this litigation. *Shelton,* 805 F.2d at 1329; *Sporck,* 759 F.2d at 315; *see also Hickman,* 329 U.S. at 510–11, 67 S.Ct. 385. The specific subset of items Mr. Allahut relied upon, out of the multitude of documents and witnesses available to the parties would "reveal important aspects of his understanding of the case." *Sporck,* 759 F.2d at 316 (citation omitted). Thus, Sparton would inappropriately compromise the privacy within which the government expects to develop its legal theories and strategy. The testimony Sparton seeks falls under the protective mantle of opinion work product.

■ The protections of the attorney work product doctrine may be waived if an otherwise undiscoverable item is voluntarily disclosed to an adversary in the litigation or in a manner inconsistent with the adversary system. *Carter,* 909 F.2d at 1451; *Triax Co. v. United States,* 11 Cl.Ct. 130, 133 (1986). In addition, disclosure of some ordinary work

product may be compelled under certain circumstances. *Hickman*, 329 U.S. at 511–12, 67 S.Ct. 385 (outlining situations in which work product might be discoverable). Notwithstanding Sparton's assertions to the contrary, "a waiver of work product protection encompasses only the items actually disclosed ... [and] does not imply that work product protection has been destroyed for other documents of the same character." 6 James Wm. Moore, *Moore's Federal Practice* § 26.70[6][c] at 26–228 (3d ed.1997).

Opinion work product, unlike ordinary work product, is afforded nearly absolute protection from disclosure. *Hickman*, 329 U.S. at 510, 67 S.Ct. 385 ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."); *Upjohn Co.*, 449 U.S. at 401, 101 S.Ct. 677 (stating that work product based upon counsel's memory of witnesses' oral statements "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship"); *see also Sporck*, 759 F.2d at 316 (noting rationale behind protection is adversary system's interest in "maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases"); *In re Sealed Case*, 676 F.2d 793, 809–10 (D.C.Cir.1982) (requiring party seeking opinion work product to demonstrate extraordinary justification). Opinion work product is, however, subject to discovery in situations in which "the mental impressions of counsel are directly at issue." *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 173 F.R.D. 7, 17 (D.Mass.1997) (citations omitted).

Sparton unpersuasively argues that it is entitled to interrogate Mr. Allahut regarding his compilation of documents and witness statements because letters dated April 22, 1988 and July 18, 1988 allegedly revealed attorney work product. In support Sparton relies on cases which have held that the protections afforded to documents and other tangible items, also known as ordinary attorney work product, may be waived by voluntary disclosure of the protected material. *See In Re Chrysler Motors Corp.*, 860 F.2d

844, 846–47 (8th Cir.1988); *Khandji v. Keystone Resorts Management*, 140 F.R.D. 697, 700 (D.Colo.1992); *Republic of the Philippines*, 132 F.R.D. at 390; *Bank of the West v. Valley Nat'l Bank of Arizona*, 132 F.R.D. 250, 262 (N.D.Cal.1990). However, not one of these cases deals with the demanding showing required to justify penetrating the opinion work product doctrine. *Upjohn Co.*, 449 U.S. at 401, 101 S.Ct. 677 (stating that opinion work product cannot be disclosed simply upon a showing of substantial need and an inability to obtain the equivalent without undue hardship).

The April 22, 1988 letter was authored by Mr. Allahut and addressed to Mr. John Bodde, Jr., identified as a R & D Contract Specialist employed by Sparton. In this letter, Mr. Allahut conveys his thoughts and position regarding a revised proposed settlement position and supports his conclusions with calculations and tabulations. The document reflects Mr. Allahut's rationale for revising the settlement value previously agreed upon after negotiations between the government and Sparton had concluded. The content and tone of the letter suggests Mr. Allahut is encouraging Sparton to agree to the revised proposed settlement agreement based upon Mr. Allahut's assessment of the law on behalf of his client.

The July 18, 1988 correspondence is a copy of internal correspondence from Mr. Allahut to the Comptroller, reporting that settlement negotiations have been completed. The letter provides the Navy Comptroller with a brief outline of the facts of the Claim and requests "$2,638,903.99 for a release from liability for all past, present and future liability." Opp'n at Ex. 11. Contrary to Sparton's assertions, this document is not reflective of Mr. Allahut's legal opinion that the government is liable. By its very nature, a settlement agreement is a consensus between the parties that allegations and assertions of liability will be dropped in exchange for a cash payment. The letter merely requests funds and does not indicate that Mr. Allahut is providing legal advice.

■ The work product doctrine is a practical one, grounded in the realities of litigation in our adversary system. *United*

**566**

*States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). In addition to those recognized by the Supreme Court in *Nobles,* another of these realities is that settlement negotiations often cannot reach agreement without a detailed factual explanation of a party's best legal arguments. *See American Optical Corp. v. Medtronic, Inc.,* 56 F.R.D. 426, 431–32 (D.Mass.1972). To the extent that confidential information has already been disclosed, the attorney work product protections have been relinquished. *Burlington Indus. v. Exxon Corp.,* 65 F.R.D. 26, 46 (D.Md.1974) (holding that waiver of attorney work product during settlement negotiations is limited to information disclosed during negotiations). However, explaining a legal position taken at settlement negotiations does not make opinion work product discoverable unless the settlement agreement itself is directly at issue. *Id.* at 45–46; *American Optical Corp.,* 56 F.R.D. at 432.

 It is determined that with regard to the knowledge Mr. Allahut may have relied upon to prepare his case for settlement, the protections of the opinion work product doctrine are not waived by either correspondence because the failed settlement has not been made an issue in the case and there appears no basis for doing so. Therefore, no basis exists for requiring defendant to reveal all his opinions and mental processes and efforts at coordinating applicable evidence.

**b. Attorney–Client Privilege**

Since Mr. Allahut's testimony is protected opinion work product which has not been waived, there is no need to determine whether the attorney-client privilege would also apply to those items allegedly disclosed. *See Shelton,* 805 F.2d at 1329. However, Sparton alleges that the government has waived the protections of the attorney-client privilege by implication by attaching a series of letters, exchanged between Sparton and the Navy, to the separately pending motion for summary judgment in this matter. Through these letters, Sparton argues that the government has placed privileged matter in issue and therefore "waived any privilege [with respect to] Allahut–Sparton communications

on the same issues." Opp'n at 10. This argument is unpersuasive.

 The attorney-client privilege provides unqualified, absolute protection from discovery for confidential communications made by a client to an attorney for the purpose of obtaining legal advice. *Upjohn Co.,* 449 U.S. at 389, 101 S.Ct. 677; *Shearing v. Iolab Corp.,* 975 F.2d 1541, 1546 (Fed.Cir. 1992); 6 James Wm. Moore, *Moore's Federal Practice* § 26.49[1] at 26–165 (3d ed.1997); *but see, Shearing,* 975 F.2d at 1546 (affirming district court decision that attorney could testify in patent case with regard to information conveyed to him outside attorney-client relationship); *Cabot v. United States,* 35 Fed. Cl. 442, 445 (1996) (holding that not every communication between a client and attorney is privileged). Further, the attorney-client privilege also protects legal advice and opinion communicated from the attorney to the client. *American Optical Corp.,* 56 F.R.D. at 430. The purpose of the privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co.,* 449 U.S. at 389, 101 S.Ct. 677; *Shearing,* 975 F.2d at 1546; *American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 745 (Fed.Cir.1987). It is well established that communications between government agencies and agency counsel are protected by the privilege so long as they are made confidentially and for the purpose of obtaining legal advice for the agency. *National Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 U.S. 132, 154, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *CIT Group/Equipment Financing, Inc. v. United States,* 24 Cl.Ct. 540, 542–43 (1991).

 The attorney-client privilege may be waived by voluntarily producing privileged material to a third party. *Genentech, Inc. v. United States Int'l Trade Comm'n,* 122 F.3d 1409, 1415 (Fed.Cir.1997); *Carter,* 909 F.2d at 1451; *see also United States v. Workman,* 138 F.3d 1261, 1263 (8th Cir.1998) (considering situation in which attorney disclosed certain memoranda). The privilege may also be waived by implication if a party raises attorney advice as a defense or places such advice

at issue. 6 James Wm. Moore, *Moore's Federal Practice* § 26.49[5] at 26–174 (3d ed.1997); *see also Workman,* 138 F.3d at 1264 (discussing waiver by implication). In those situations in which privileged attorney-client communication related to a particular subject have been revealed, some Courts have held that, unlike a waiver of the attorney work product doctrine, the attorney-client privilege is waived as to all communications between the attorney and the client on the same subject. *See Smith v. Alyeska,* 538 F.Supp. 977, 980 (D.Del.1982) (holding that disclosure of opinion letter required disclosure of all communications between attorney and client upon same subject matter), *aff'd,* 758 F.2d 668 (Fed.Cir.1984). It is this principle upon which Sparton unpersuasively relies in arguing that disclosure of certain letters should provide authority for Mr. Allahut's deposition.

Of the ten letters identified by Sparton, eight were authored by either Sparton employees or Sparton's attorneys and all were addressed to the Navy. Even if it wanted to do so, the government could not assert attorney-client privilege with respect to materials sent to it by Sparton. The attorney-client privilege only exists as to communications between attorneys and their clients or prospective clients. further, the attorney client privilege belongs to the client alone. *Carter,* 909 F.2d at 1451; *American Standard,* 828 F.2d at 745. There has never been an attorney-client relationship between Sparton and Mr. Allahut. Therefore, the attorney-client privilege may not be breached by the government's use of evidence provided to it by Sparton.

The remaining two letters were sent from the Navy to Sparton. The issue with regard to those two items is whether the government waived the attorney-client privilege by disclosing protected information to Sparton. The first letter, dated August 24, 1981 is unsigned and was sent over the name K.W. Dobyns with a further indication that the correspondence was prepared at the direction of the Chief of Naval Research ("August 24, 1981 letter"). The letter is addressed to Mr. John H. Bodde, identified as a Manager in the Contract Administration Department of Sparton Corporation. In this document the government responded to Sparton's letter of July 2, 1981 in which Sparton reported a "conception date" of September 1970 and a "reduction to practice date" of February 18, 1971. The August 24, 1981 letter merely requests Sparton to provide evidence to confirm the conception date and reduction to practice date. There is no indication that confidential information was revealed and no basis for determining that the attorney-client privilege was breached by implication or otherwise.

The second letter from the government to Sparton dated February 9, 1982 is also an unsigned letter sent over the name K.W. Dobyns with the notation "By direction of the Chief of Naval Research" and addressed to Mr. Bodde. In this letter the Navy offers its opinion that the on-sale bar renders the patents at issue in this case invalid. Since the government offers an adversarial position and not legal advice, there is neither evidence that confidential communications have been disclosed nor that Mr. Allahut's advice to the Navy has been injected into this case. *Smith,* 538 F.Supp. at 980. Accordingly the attorney-client privilege has not been breached.

Sparton correctly asserts the legal principle that prohibits the use of the attorney-client privilege as both a shield and a sword. *See Workman,* 138 F.3d at 1263–64; *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991); *Burlington,* 65 F.R.D. at 46; *American Optical Corp.,* 56 F.R.D. at 432. Closely related to the issue of waiver of the attorney-client privilege, this principle is intended to prevent parties from disclosing some attorney client communications while retaining other, potentially harmful communications under the guise of the attorney-client privilege. *Workman,* 138 F.3d at 1263–64; *Bilzerian,* 926 F.2d at 1292; *Burlington,* 65 F.R.D. at 46; *American Optical Corp.,* 56 F.R.D. at 432. Accordingly, the government will not be permitted to use Mr. Allahut as a witness or affiant in this action without first permitting Sparton an opportunity to explore that testimony through a deposition. However, there is, at this juncture, no evidence that the government in-

tends to use Mr. Allahut as a witness or expert in this litigation. If the government determines it will use Mr. Allahut's testimony, it must permit Sparton to depose Mr. Allahut. *See, e.g., Bio–Rad Laboratories, Inc. v. Pharmacia, Inc.,* 130 F.R.D. 116, 124–25 (D.Cal.1990) (determining that in situation in which patent attorney is made expert witness then deposition of that attorney must be allowed).

Finally, the relevance of Mr. Allahut's assessment of this case on his client's behalf is not immediately apparent from the documents before the Court. Relevance is dependent upon whether the "subject matter [of the sought after discovery was] involved in the pending action." *Micro Motion, Inc.,* 894 F.2d at 1326–27. Under this standard of review, Sparton has not offered any support for its contention that Mr. Allahut's testimony is relevant either to prove the elements of the alleged infringement or to defeat the government's "on-sale bar" defense. *Id.; Truswal Systems Corp. v. Hydro–Air Engineering Inc.,* 813 F.2d 1207, 1211 (Fed.Cir. 1987) (determination of whether the proposed discovery would be relevant in patent case requires Court to look to the substantive law of patent validity and infringement). Furthermore, there is no indication that the proposed settlement agreement or the failed negotiations have at any time become an issue for the Court's consideration. Accordingly, it is considered that based upon the facts presented there is no basis for determining that Mr. Allahut's testimony is relevant to Sparton's position in this litigation.

### (3)

Likewise, there has not been any evidence introduced which would indicate that Mr. Allahut's testimony is crucial in this litigation. Mr. Allahut was empowered to negotiate the terms of a proposed settlement of Claim S–153 on behalf of the Navy, but was without authority to finalize the agreement. The attorney does not have independent or first hand knowledge of the facts which led to Claim S–153. Sparton may anticipate that Mr. Allahut will lend testimony which will bolster its case or otherwise support its claims against the government, however, that

rationale is insufficient to permit invasion of an attorney's preparation of a client's case. *Hickman,* 329 U.S. at 495, 67 S.Ct. 385. It is considered that Mr. Allahut's recollection of the items he considered and relied upon in order to prepare his professional evaluation of the Navy's posture for settlement purposes, would encourage unproductive speculation into Mr. Allahut's mental processes and legal theories on behalf of his client.

█ Accordingly, it is determined; Sparton has failed to demonstrate that the requested deposition is appropriate and necessary to its case. Defendant's motion for a protective order precluding Mr. Allahut's testimony in its entirety is supported by applicable precedent.

### CONCLUSION

For the reasons stated above it is **ORDERED:**

(1) That insofar as Mr. Allahut's testimony will not be offered at trial or in support of the motion for summary judgment, defendant's motion for Rule 26(c) protective order is **GRANTED;**

(2) However, if the defendant determines to utilize Mr. Allahut either as a witness at trial or as an affiant in support of the motion for summary judgment, Sparton must then be afforded adequate opportunity to depose him.