**EXXON RESEARCH AND ENGINEERING CO.,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 98–201 C.

United States Court of Federal Claims.

Aug. 27, 1999.

Steven D. Glazer, James W. Quinn, Elizabeth S. Weiswasser, and David J. Lender, New York City, and Patrick J. Conlon, Florham Park, New Jersey, for plaintiff.

Grace Karaffa, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant, with whom were David W. Ogden, Acting Assistant Attorney General, Vito J. DiPietro, Director, and Thomas J. Byrnes, Richard Ruzich, and Ken B. Barrett, of counsel.

## *OPINION*

DAMICH, Judge.

*Markman v. Westview Instruments*, 52 F.3d 967 (Fed.Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), established that the construction of the terms in a patent is an issue of law for the court to decide. In the wake of *Markman*, many procedural questions have arisen, which the trial courts and appellate courts are attempting to resolve. This case presents the question of how the parties may conduct discovery with respect to claim construction issues. In the factual circumstances of this case, the Court has determined that a Rule 30(b)(6) deposition is not appropriate. Instead, the party seeking discovery may use contention interrogatories.

### I. FACTS

Exxon Research and Engineering Co. ("Exxon") alleges that the United States infringed two patents, United States Patent Nos. 5,348,982 and 5,292,705. Both patents concern the process for converting natural gas to premium quality hydrocarbons. According to Exxon, the United States Department of Energy working with its partners, Air Products and Chemicals, Inc., and Shell Synthetic Fuels, Inc., at the Alternative Fuel Development Unit in LaPorte, Texas, infringed these patents. Exxon is seeking reasonable compensation pursuant to 28 U.S.C. § 1498(a).

Pursuant to R.C.F.C. 30(b)(6), the United States noticed the deposition of a corporate representative of Exxon. The notice provided that Exxon should designate a person to testify on issues relating to claim construction.[1]

Exxon filed a motion for protective order to prevent the deposition from proceeding. Fundamentally, Exxon argues that it would have to designate an attorney because claims construction is a legal issue and it would be prejudiced to have its attorney deposed. Exxon maintains that because the use of contention interrogatories is a practical alternative, the government has not shown a need to depose one of its attorneys.

---

1. Specifically, the deposition notice sought a corporate representative to testify on the meaning and scope of the terms in the asserted claims of the patents in suit, the meaning of various terms from the specifications of the patents in suit, and each element of the Defendant's activities that meets a corresponding claim limitation of the patents in suit.

## II. LAW

### A. Rule 39(b)(6)

#### 1. Text

A party may, in the party's notice and in a subpoena, name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization.

R.C.F.C. 30(b)(6).

Neither the parties' briefs nor the Court's own research have discovered a case from the Federal Circuit that addresses whether Rule (30)(b)(6) depositions are appropriate on the topic of claim construction. Federal law interpreting Fed.Rules of Civ.Proc. is persuasive authority for an identical rule of the Court of Federal Claims. *Wheeler v. United States*, 11 F.3d 156 (Fed.Cir.1993); *Knieper v. United States*, 38 Fed.Cl. 128 (1997). Accordingly, this opinion will frequently cite to opinions interpreting F.R.C.P. 30(b)(6).

#### 2. Informative Case Law

Exxon relies heavily on *McCormick–Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275 (N.D.Cal.), *rev'd in other part*, 765 F.Supp. 611 (N.D.Cal.1991), to support its argument that a 30(b)(6) deposition on claim construction is generally not permitted. Instead of requiring the deponent to produce a witness for a 30(b)(6) deposition, *McCormick–Morgan* ordered that the party respond to contention interrogatories. As one reason for the decision, *McCormick–Morgan*

mentions that a non-lawyer could not explain the parties contentions. *Id.*, at 287.

In reasoning that a non-lawyer could not easily testify, *McCormick–Morgan* opens the possibility for a lawyer to testify. *United Technologies v. Borg–Warner Automotive*, 50 USPQ2d 1060, 1998 WL 1032111 (E.D.Mich. 1998), takes advantage of this opening. In *United Technologies*, the Court ordered a Rule 30(b)(6) deposition of the Plaintiff's in-house patent counsel to proceed.[2] The Court believed a 30(b)(6) deposition was almost the same as answering interrogatories: the Plaintiffs "answers to interrogatories were signed, and presumably prepared, by its lawyers. I see no reason why deposition testimony cannot be provided in the same fashion." *Id.*, at 1062.

The United States cites to *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996), and *De Graffenried v. United States*, 2 Cl.Ct. 640 (1983), to support its argument that a Defendant is entitled to a Rule 30(b)(6) deposition of a Plaintiff asserting a claim for patent infringement even when the Plaintiff is a corporation. These cases warrant detailed consideration.

*United States v. Taylor, supra*, 166 F.R.D. 356, was a case about corporate liability under the superfund law. In *Taylor*, Union Carbide Corp. (UCC), the party receiving the notice for a 39(b)(6) deposition maintained that it was having difficulty in locating an employee to testify on the designated topics in part because UCC did not employ these individuals any longer. The Court ordered UCC to produce someone because "[t]hese problems do not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.*, at 361.

In forcing UCC to designate and to prepare someone to testify, the Court discussed the connection between corporations, which only act through human agents, and its attorneys. "The attorney for the corporation is not at liberty to manufacture the corpora-

---

**2.** To be fair, *United Technologies* concerns a somewhat simpler factual situation because the Plaintiff originally designated its in-house patent counsel as the corporate representative. In later

raising an issue of work product doctrine, the Plaintiff was trying to correct a problem that it had created.

tion's contentions. Rather, the corporation may designate a person to speak on its behalf and it is this position which the attorney must advocate." *Id.*, at 361–62.

Because someone in the corporation holds the corporation's knowledge or formed the corporation's opinion, the corporation must designate someone to speak for it. The Court felt comfortable making the corporation bear this burden:

> Rule 39(b)(6) explicitly requires [the corporation] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 39(b)(6) deposition.... The Court understands that preparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form to conduct business.

*Id.*, at 362.

"If a corporation has knowledge or a position as to a set of alleged facts or an area of inquiry, it is its officers, employees, agents or others who must present the position, give reasons for the position, and, more importantly, stand subject to cross-examination. A party's trial attorney normally does not fit that bill." *Id.*, at 362.

Although *Taylor* required the corporation to present someone to testify knowledgeably pursuant to the 30(b)(6) deposition, *Taylor* also discussed the value of contention interrogatories.

> Some inquiries are better answered through contention interrogatories wherein the client can have the assistance of the attorney in answering complicated questions involving legal issues.... Whether a Rule 30(b)(6) deposition or a Rule 33(c) contention interrogatory is more appropriate will be a case by case factual determination. *McCormick–Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275, 286 (N.D.Cal.), *rev'd on other grounds*, 765 F.Supp. 611 (N.D.Cal.1991) (contention interrogatory, not Rule 30(b)(6) deposition, more appropriate in very complex and highly technical lawsuit); *Protective Nat.*

> *Ins. v. Commonwealth Ins.*, 137 F.R.D. 267, 282–83 (D.Neb.1989) (Rule 30(b)(6) deposition, not contention interrogatories more appropriate where designee has expertise to answer questions.)

*Id.*, at 362 n. 7.

The United States strongly argues that *Taylor* means that a corporation must produce someone in response to a Rule 30(b)(6) notice regardless of the difficulties faced by the corporation. If the corporation believes that only an attorney is capable of testifying, then the attorney must testify. Moreover, *Taylor* prevents a corporation from using an attorney to assert a factual position for which no witness can testify. The United States connects the principles that it extracts from *Taylor* to the case at hand by referring to *De Graffenried v. United States*, 2 Cl.Ct. 640 (1983).

In *De Graffenried*, an individual who owned a patent sued the government for infringement. The government filed a motion to compel to force the individual to answer questions, originally posed at the Plaintiff's deposition, on "the claimed invention's contribution over the prior art; and the infringement of the '568 patent by the accused devices." The Plaintiff refused to answer certain questions because "the inquiries sought legal conclusions and opinions; ... were unduly onerous in that they would require [the Plaintiff] to study his patent and the accused device; ... [the Plaintiff's] interpretation of documents were improper because those documents spoke for themselves." *Id.*, at 642.

*De Graffenried* ruled that the Plaintiff had to answer the questions. The Court found that the Plaintiff had a technical expertise and his knowledge would be useful to the Court in developing a clear understanding of the issues. The Court also required the Plaintiff to answer questions about the interpretation of the patent because the patent contained technical language. Citing Wigmore on Evidence, the Court explained that experts are allowed to comment on the interpretation of technical language. *Id.*, at 643.

The United States argues that *De Graffenried* supports its position: the patent *holder*

must testify about the claims in the patent and the lawsuit's claim of infringement. Further, the United States argues that the only factual distinction between *De Graffenried* and this case is that Exxon is a corporate Plaintiff. The United States contends that this distinction supports its position because Exxon can designate whomever it wants to discuss the factual basis for this lawsuit.

Exxon argues that *De Graffenried* stands for the proposition that the Defendant may depose the inventor. Exxon is willing to let the inventors be deposed.[3]

*CellNet Data Systems, Inc. v. Itron, Inc.*, 178 F.R.D. 529 (N.D.Cal.1998), supports Exxon's interpretation of *De Graffenried*. In *CellNet*, the Defendant filed a motion to compel to force the Plaintiff's Chief Technology Officer, who was also a named inventor, to answer questions at a deposition.[4] These questions concerned the meaning of terms in the patent. The Court ordered the questions to be answered based on *Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372 (N.D.Cal.1992), which "permit[ed] the inventors to testify about their understanding of the meaning of certain key phrases." *Id.*, at 533. *CellNet* also relied on *De Graffenried* and discussed *De Graffenried* as seeking the deposition of the "inventor." *Id.*, at 534. *CellNet* distinguished *McCormick–Morgan* because the inventor was not questioned about "the contentions raised by CellNet in its pleadings." *Id.*, at 534.

## B. Contention Interogatories

■ "[C]ontention interrogatories seek to discover the factual basis for the allegations raised in the complaint, answer or counterclaim. The purpose of contention interrogatories is also to determine the theory of a party's case." Iain D. Johnston & Robert G. Johnston, *Contention Interrogatories in Federal Court*, 148 F.R.D. 441, 442 (1993).

Rather than be forced into a Rule 30(b)(6) deposition, Exxon is willing to answer contention interrogatories. Exxon, again, relies on *McCormick–Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275 (N.D.Cal.1991), as a supporting authority.

The United States believes that a deposition is more appropriate than interrogatories. The United States offers three reasons: first, Exxon has not responded to other contention interrogatories which have been pending for some time; second, the United States has the right to select the discovery method that it wants to use; and third, Exxon's repeated attempts to thwart the discovery process means that Exxon will not respond fairly to contention interrogatories.[5]

## III. Analysis

■ Whether a 30(b)(6) deposition or contention interrogatories are more appropriate is decided on the facts of each case. See, *United States v. Taylor*, supra, 166 F.R.D. 356, 362 n. 7. Although the Court's decision in this case is a close call, the Court finds that contention interrogatories are more appropriate at this time. In reaching this decision, the Court is persuaded to side with Exxon because (a) contention interrogatories should be a less expensive method and are a less invasive method of letting the United States learn the required information, (b) claim construction is a difficult issue to summarize for one deponent, and (c) a deposition of an attorney should be avoided until other possible methods for discovery are attempted and found unsuccessful.

*McCormick–Morgan*, supra, 134 F.R.D. at 286, discusses the two methods of discovery at issue here, the 30(b)(6) deposition and the 33(c) contention interrogatory. In *McCormick–Morgan*, the Court rejected the Defendant's request to use both techniques:

While there might be some circumstances in which pursuing the same kind of infor-

---

3. The testimony of the inventors does not fill the same purpose as a Rule 30(b)(6) deposition because their testimony would not bind the corporation.

4. *CellNet* does not mention whether this deposition was a 30(b)(6) deposition.

5. For reasons stated below, it is unnecessary to detail the nature of previous discovery disputes. While zealously representing their clients, the attorneys have not always agreed with the position taken by the other side in discovery. The parties' patterns, if any, of propounding and responding to discovery is tangential to the specific question answered in this opinion.

mation, or exploring the same subjects, through more than one discovery tool could be justified (e.g., where credibility issues were pivotal, or the information sought was of such an elusive and important character that fair explication of it would require probes from more than one direction and in more than one form), we have seen no such justification in this case.

*Id.*

■ Having determined that the Defendant could not use both methods.

the question to which [the Court] now turn[s] is: which of the available devices is most appropriate, i.e., which device would yield most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court in a case like this?

*Id.*

■ The Court adopts this test. The result of this test favors the Plaintiff's position. Interrogatories almost always cost less money than a deposition. Properly worded contention interrogatories should provide the information that the Defendant needs.

Contention interrogatories also avoid the problem of requiring Exxon to designate one or more persons to explain how Exxon believes its patents should be construed and how Exxon believes its patents were infringed. As discussed in *McCormick–Morgan, supra,* 134 F.R.D. at 286–87, this task would be difficult.

*Protective Nat. Ins. Co. v. Commonwealth Ins.,* 137 F.R.D. 267 (D.Neb.1989), recognizes that a Rule 30(b)(6) deposition may not be appropriate when the topic is very complex. *Protective Nat. Ins.* concerned how a primary insurance company handled a claim and whether its claim handling caused its reinsurance company damages. The Court permitted the 30(b)(6) deposition to proceed be-cause the deponent was experienced in claims handling and was an accountant. *Protective Nat. Ins.,* however, distinguished *Lance, Inc. v. Ginsburg,* 32 F.R.D. 51 (E.D.Pa.1962), that required contention interrogatories on the question of whether a trademark was valid. *Id.,* at 281–82. In this way, *Protective Nat. Ins.* and *Lance* favor Exxon's position because questions about how a device infringes a patent are more like questions about a trademark than questions about a claims procedure.

In addition, the legal issue (construing patent claims) may be too complex for a deponent, who is not an attorney, to answer questions competently. It appears [6] that if this Court orders the 30(b)(6) deposition to proceed, Exxon would designate an in-house patent attorney to testify.

The Court hesitates to order the deposition of one of Exxon's attorneys.[7] This hesitancy is not absolute: if the United States is not satisfied with Exxon's answers to contention interrogatories, the Court is willing to consider again the appropriateness of a Rule 30(b)(6) deposition.

A Rule 30(b)(6) deposition of an in-house patent attorney may be appropriate for two reasons. First, an in-house attorney differs from a trial attorney. Second, the corporation has an obligation to produce binding testimony.

First, an in-house attorney performs a different role than a trial attorney. A law firm has represented Exxon throughout this litigation, although Conlon, in conjunction with a member of the law firm, has also appeared and presented Exxon's position at Court arguments and conferences. As an in-house person, Conlon is an employee of Exxon, unlike the attorneys from the law firm who are independent. Because Conlon does not work for the law firm in charge of the litigation, there is less likelihood that Conlon will reveal the mental impressions and opinions

6. The Court notes that Exxon has not submitted a statement under oath declaring that the only person capable of testifying is its in-house patent lawyer, who is elsewhere identified as Patrick Conlon. Exxon Represented in its brief that "Exxon's contentions on such legal issues simply could not be addressed by an individual other than a patent attorney." Because the Defendant has not specifically raised this issue, the Court will overlook the lack of an affidavit.

7. For a very recent opinion discussing deposing an attorney, see *Sparton Corp. v. United States,* No. 92–580C, 1999 WL 601137, 1999 U.S. Claims LEXIS 188, ⸺ Fed.Cl. ⸺ (Fed.Cl. Aug. 9, 1999).

of counsel that the Courts so scrupulously protect. To the extent that Conlon has learned these mental impressions because he has been counseled by the law firm, Conlon is in the same position as any other corporate representative that has received legal advice from an attorney. The fact that Conlon happens to have a law degree does not seem to place him (or other in-house patent attorneys) into a category of people who absolutely cannot be deposed. See, *Research Institute for Medicine & Chemistry, Inc. v. Wisconsin Alumni Research Foundation,* 114 F.R.D. 672, 676 (W.D.Wis.1987) (scrutinizing the role of an in-house patent attorney carefully).

Further, in *United Technologies v. Borg–Warner Automotive,* supra, 50 USPQ2d 1060, 1998 WL 1032111, the Plaintiff designated its in-house patent attorney as the person for a Rule 30(b)(6) deposition. This case shows that, at least in one case, the in-house patent attorney could testify.

Second, Exxon must accept some consequences of being a corporation. *United States v. Taylor,* supra, 166 F.R.D. 356, makes this point most strongly. As a corporation, Exxon "decided" to bring this lawsuit. A person made this decision. If that person was an in-house attorney, then the government is entitled to depose that person.

By offering to present the inventors, who will give their own "lay" opinions.[8] Exxon avoids providing the corporation's opinions. If the inventors had not assigned their patents to a corporation and the inventors were bringing an infringement action as individuals, there seems to be no question that the Defendant could depose the inventors/Plaintiff. *De Graffenried v. United States, supra,* 2 Cl.Ct. 640. In a case like *De Graffenried,* where the inventor is the Plaintiff, the inventor's testimony also binds the Plaintiff.

Here, Exxon, as a corporation, wants to be free of a binding deposition. In the only case cited by the parties[9] to address this issue, *AMP Inc. v. Molex Inc.,* 227 USPQ 172, 1985 WL 2284 (N.D.Ill.1985), the Court ruled the "plaintiff's interpretation of the patent is the basis of this lawsuit, and questions thereon are allowed." *Id.* "A corporation should be no more shielded from the consequences of this type of inquiry than an individual." *Id.*

Exxon has offered to respond to appropriately worded[10] contention interrogatories in lieu of a Rule 30(b)(6) deposition. This procedure is an acceptable alternative under the circumstances of this case. As mentioned earlier in this opinion, if the contention interrogatories do not give the United States the requested information,[11] then it may need to resort to a Rule 30(b)(6) deposition at which Exxon's in-house patent attorney will need to testify.

## IV. CONCLUSION

Accordingly, the Plaintiff's Motion to Quash is GRANTED.

---

**8.** "Lay" opinion is used in the sense that the construction of the patent's claims is a legal question for the Court to decide, not a factual question on which testimony is necessary.

**9.** Exxon claims that this case should be rejected "out of hand" because it was decided before *Markman.* This distinction is without merit because *Markman* did not eliminate the obligation of a party claiming patent infringement to produce binding testimony on claim construction issues.

**10.** What is "appropriately worded" may depend on the eye of the beholder. The Court fully expects "good-faith" efforts between the parties to resolve any disputes about the wording of the contention interrogatories and answers to the interrogatories.

**11.** In making this conditional ruling, the Court turns again to *McCormick–Morgan.*

We also feel constrained to acknowledge that in many settings and cases contention interrogatories yield precious little useful information, in part because the lawyers who craft the responses seem to assume that it is their professional responsibility to be as stingy and self-serving in the answers they write as a strained view of the English language and the proper bounds of legal ethics permit. That apparent fact of litigation life makes us pause, to say the least, before ruling, even in the limited circumstances of this case, that the most appropriate vehicle for disclosing the kind of information and argument at here is a sensibly crafted set of contention interrogatories.

*McCormick–Morgan, Inc. v. Teledyne Industries, Inc.,* supra, 134 F.R.D. at 287.